**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harry Anthony PECK,
Defendant-Appellant.**

No. 76–1106.

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1977.

Leroy H. Scott, Jr., B. J. Woods, Shreveport, La., for defendant-appellant.

Donald E. Walter, U.S. Atty., J. Ransdell Keene, James E. Wilson, D. H. Perkins, Jr., Asst. U.S. Attys., Shreveport, La., for plaintiff-appellee.

Before COLEMAN, GODBOLD and HILL, Circuit Judges.

GODBOLD, Circuit Judge:

The appellant Peck landed his private plane at night on Barksdale Air Force Base, located at or near Shreveport in Bossier Parish, Louisiana. A federal complaint was filed charging that he did:

intentionally, unlawfully, without authorization and within the territorial jurisdiction of the United States, enter and criminally trespass upon posted public lands in Bossier Parish, to wit, Barksdale Air Force Base, in violation of U.S.C. Tit. 18 Section 13; and LRS 14:63.6.

18 U.S.C. § 13 is an assimilative crimes statute, providing:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

The complaint tracks the Louisiana statute referred to in the complaint, LRS 14:63.6, which is assimilated into federal law by 18 U.S.C. § 13. Section 63.6 provides:

A. Criminal trespass in the parish of Bossier is:

(1) the unauthorized and intentional taking possession of any tract of land or structure thereon without the consent of the owner thereof; or

(2) the unauthorized and intentional entry upon any:

(a) plot of immovable property enclosed by natural barriers and/or artificial barriers and upon the boundaries of which legible signs have been placed by authority of the owners at main points of ingress and egress and at regular intervals along said boundaries bearing such words as "Posted", "Private Property", "No Trespassing", "No Hunting", "No Fishing" or words of similar import in such manner as to reasonably notify the public that said land is posted against trespassers; or

(b) posted public lands and lands belonging to public institutions, whether or not the same are enclosed; or

(c) building, dwelling, structure, water craft or movable, whether or not the same is posted or enclosed;

(d) plot of immovable property in excess of one (1) acre which is posted but not enclosed, unless said property is situated in an Open Range area as same is defined in this Section.

B. As used in this Section:

(1) "Enclosed" property means any immovable property which is surrounded or encompassed by natural and/or artificial barriers.

(2) Natural barriers include:

(a) Lakes or ponds or other bodies of water which hold water during twelve months of the year; and

(b) Any river, stream, bayou or canal in which water is held or runs during twelve months of the year; or

(c) Other similar natural barriers.

(3) Artificial barriers include:

(a) Any wall or wire, stone, metal or wooden fence; and

(b) Any cattle-guard being used as part of a fence; or

(c) Other similar barriers.

(4) Open Range area means any area in which livestock are not prohibited by law to freely rove, provided that any road or highway which is required by law to be fenced, and which passes through any area in which livestock are not otherwise prohibited by law to freely rove, shall not prevent such area from being classified as Open Range.

\* \* \* \* \* \*

 A United States magistrate found Peck guilty. He appealed to the district court pursuant to 18 U.S.C. § 3402. Review by the district court of a conviction before the magistrate is not a trial de novo but is the same as review by a court of appeals of a decision by a district court. Rule 8(d), Federal Rules of Procedure for the Trial of Minor Offenses Before the U.S. Magistrate. The district court held that there was "ample law and evidence" to support a finding by the magistrate that Barksdale was "posted [public land]."

In our review we apply to the magistrate the same standard used by the district court. *U. S. v. Hughes,* 542 F.2d 246 (CA 5, 1976). We reverse the district court and hold that the conviction must be reversed.

The first step is to examine the Louisiana statutory scheme. "Offenses Against Property" are covered by Part III, of Chapter 1,

of Title 14 of the Louisiana Revised Statutes. Sub-part A of Part III covers offenses against property "By Violence to Buildings and Other Property." Part 4 of Sub-part A is devoted to "Criminal Trespass." Part 4 contains a general criminal trespass statute (§ 63), statutes concerning illegal posting, and illegal destruction, defacing or removal of posted signs (§§ 63.1 and 63.2), entry upon or remaining in a place after being forbidden (§§ 63.3 and 63.4), and a number of local criminal trespass statutes (§§ 63.5–.10), including the one at issue in this case.

Section 63 is the general criminal trespass statute. Part A thereof covers all parishes except ten named parishes. It defines criminal trespass as:

(1) The unauthorized and intentional taking possession of any tract of land or structure thereon without the consent of the owner thereof; or

(2) The unauthorized and intentional entry upon any:

(a) Plot of immovable property in excess of one acre which is posted but not enclosed, unless said property is situated in an open range area; or

(b) Plot of immovable property which is posted and enclosed, including property situated in open range areas; or

(c) Posted lands belonging to public institutions; or

\* \* \* \* \* \*

Sub-section B of § 63 is the definitions sub-section. It provides:

B. Definitions

For purposes of criminal trespass, the following definitions are adopted:

(1) "Posted" property means any immovable property which is designated as such by the owner, lessee or other person lawfully authorized to take such action, provided the following requirements are satisfied:

(a) The owner or person seeking to post the property shall place and maintain signs along the boundaries of the property or area to be posted, which

signs shall be written in the English language, and said signs shall contain the words, "Posted", or, "Private Property", or words to that effect.

(b) The signs shall have letters at least five inches in height and shall be of sufficient size and clarity to give notice to the public of the location and boundary of the posted property. The signs shall be placed and maintained at intervals of not more than one-eighth of a mile and shall be at least three but not more than nine feet above the ground or water level.

(c) At the main entrance to the property and at no less than four extremities along the boundary of said property the party seeking to post same shall include his name and address on the posted signs in addition to the words "Posted", or, "Private Property", or words to that effect.

(d) In woodland, or areas where land is heavily overgrown, the party seeking to post the property, in addition to placing and maintaining signs as prescribed in this section, must be fenced with not less than three strand wire, or its equivalent.

(e) In marsh lands, posted signs shall also be placed at all major points of ingress or egress.

(2) "Enclosed" property means any immovable property which is surrounded or encompassed by natural and/or artificial barriers.

Natural barriers include:

(a) The Gulf of Mexico,

(b) Lakes or ponds or other bodies of water which hold water during twelve months of the year,

(c) Any river, stream, bayou or canal in which water is held or runs during twelve months of the year,

(d) Other similar natural barriers.

Artificial barriers include:

(e) Any wall or wire, stone, metal or wooden fence,

(f) Any cattle-guard being used as part of a fence,

(g) Other similar barriers.

(3) "Open Range" area means any area in which livestock are not prohibited by law to freely rove, provided that any road or highway which is required by law to be fenced, and which passes through any area in which livestock are not otherwise prohibited by law to freely rove, shall not prevent such area from being classified as "open range".

Sub-section D of § 63 covers the ten parishes excepted in sub-section A. Sub. (1) thereof is the same as A(1). Sub. (2) provides:

(2) The unauthorized and intentional entry upon any:

(a) enclosed and posted plot of ground; or

(b) posted lands belonging to public institutions; or

\*　　\*　　\*　　\*　　\*　　\*

Section 63 was rewritten in 1960 at which time sub-section B, the definitions part, was added. Thus, prior to 1960 "posting" was not defined.

The local acts differ in some details but insofar as pertinent to this case they follow the same general pattern.[1] Each contains a section similar to sub-section A(2)(a) of § 63.6, the Bossier statute, forbidding entry upon enclosed immovable property where appropriate legible signs have been placed. Each contains a section similar to A(2)(b) of § 63.6, covering public land, or land belonging to public institutions, or both; each refers to "posting." Some of the local acts contain the definitions of posting set out in § 63, sub-section B; others do not. The Bossier statute, § 63.6, was adopted in 1964. From the portion quoted above, it is seen that its definition section tracks § 63, sub-section B with respect to enclosed property, natural and artificial barriers, and open range. It does not contain the precise definition language of § 63, sub-section B. Rather it includes in sub-section A(2)(a) its

---

1. Section 63.5, Jefferson Davis Parish; § 63.6, Bossier Parish; § 63.7, Terrebonne Parish; § 63.8, St. John the Baptist Parish; § 63.9, Jefferson Parish; § 63.10, Caddo Parish.

own provisions covering (for certain immovable property) the giving of notice by signs bearing such words as "Posted" (etc.), "or words of similar import in such manner as to reasonably notify the public that said land is posted against trespassers." Subsection 63.6(A)(2)(b), under which Peck was charged, does not specifically incorporate or refer to sub. (a), immediately preceding, for a definition of "posted."

Section 63.1 is titled "Illegal posting" and defines that particular criminal offense in this way:

> Illegal posting is the posting or the placing and/or maintaining of posted signs on property by anyone other than [owner, agent, lessee, etc.].

Section 63.2 makes it a criminal offense to destroy, deface or remove "posted signs."

Section 63.3, enacted in 1960, is more than an unlawful entry statute. It proscribes entering or remaining upon property after having been forbidden to do so "either orally or in writing, including by means of any sign hereinafter described." The section then provides where signs must be posted. Section 63.4 is a parallel aiding and abetting statute. These statutes are examples of legislative provisions for communication of warnings concerning the status of land by means other than erecting signs.

The government advances two alternative theories for sustaining both the applicability of § 63.6(A)(2)(b) to Peck's landing at Barksdale and the sufficiency of the evidence: (1) the base was posted against [ground] vehicular traffic; (2) it was posted because it displayed a distinctively colored beacon which identified it as a military air field.

At trial the magistrate stated that it was stipulated that the base was "a posted area for all vehicular traffic on the ground." It is not clear that the defense agreed to a stipulation this broad. Defense counsel appears to have only agreed that the base is fenced and that there are designated places for ground-level ingress and egress, and to

have excluded any agreement concerning the presence and nature of signs. Nevertheless, for purposes of this appeal we accept that the stipulation as stated by the court—that the base was "posted" with respect to ground vehicular traffic—established not only that the base was fenced and that there were designated places for ground level ingress and egress but also that there were in place signs observable at ground level. This is the totality of what was before the magistrate with respect to signs.

 With the proof in the posture just described, we reach a two-fold conclusion. We have considerable doubt that § 63.-6(A)(2)(b) ever has application to an intruder entering Barksdale by airplane. But, if this sub-section can apply at all to an air traveler-intruder, posting Barksdale by signs visible to vehicular ground traffic was not a posting sufficient with respect to an air traveler.

Nothing in the Louisiana statutory scheme suggests that any of the criminal trespass statutes are intended to apply to one entering by air. To the contrary, the statutory terms concerning boundaries, natural and artificial barriers, and open range are ground (and water) level concepts. The provision in § 63, sub-section B prescribing the size of letters used on signs, minimum and maximum heights above the ground, and maximum intervals for placement of signs, are directed at ground level recipients of the information conveyed by signs. However, sub-section (b) of § 63.6(A)(2), under which Peck was charged, refers to "posted public lands," with no definition of "posted." We recognize the possibility that the definition of "posted" in (b) is drawn from neither the provisions for signs in the immediately preceding (a) nor from the provisions for signs in § 63, sub-section B, but embodies a general concept of signs [2] reasonably calculated to give notice to the classes of persons to whom they are intended to convey information. Thus, we do not foreclose the possibility that Barksdale can

---

2. As discussed below, we reject the concept that, in the absence of specific provision, the statutory scheme permits posting by some means other than signs.

convey to air travelers the information embraced in the Louisiana concept of posting by placing on the upward surface of the ground or of runways, or on hangar roofs, control towers, or similar structures, signs of such size and location that an approaching pilot can see a sign and receive from it the information that he is forbidden to enter. There is no evidence that any such sign existed at Barksdale.

 This leaves the alternative argument that the colored beacon was a "posting" as meant by sub-section (b). Except in §§ 63.3 and 63.4, where other means are specifically provided,[3] there is simply not even a hint in the Louisiana statutory scheme that posting can be by a means other than signs. Everything points in the opposite direction.[4]

Peck caused the military expense and considerable alarm by dropping down unannounced from the skies onto Barksdale when a military exercise was in progress. With proper alertness, the military immobilized him and his plane where the plane stopped rolling after touching down. The government insists that Peck should not go unwhipt of justice because the evidence supports inferences that he knew that Barksdale was a military base, was familiar with the area, knew what the beacon meant, and was aware that he was landing at Barksdale, and had not been given permission by the tower. Possibly his actions violated civil air regulations or some specific federal statute (though the government points to none). But the government has sought to exact punishment through the means of a state statute which possibly does not ever apply to an air traveler and, if ever applicable, was not proved to be applicable to Peck's landing at Barksdale. The conviction must be, and is,

REVERSED.

---

3. Sections 63.3 and 63.4 provide for notice "either orally or in writing, including by means of any sign hereinafter described." The charge against Peck was not brought under either of these sections. It is doubtful that it could have been. These sections relate to entering upon, or remaining in or upon, "any structure, water craft or other movable which belongs to another, including public buildings and structures, ferries and bridges . . . . after having been forbidden to do so." In context, it is doubtful that an air base is a "public structure" and that a colored light is notice "either orally or in writing."

4. Of course, this is not meant to say that the government cannot legislatively create the offense of trespass by an air traveler based upon notice of "posted" status given by any reasonable means it selects, signs or otherwise. The problem in this case is not the scope of governmental power but the meaning of the assimilated Louisiana statute.