**UNITED STATES of America, Appellant,**

v.

**Cecil B. MOORE, Appellee.**

**No. 77–1727.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 9, 1977.

Decided Nov. 20, 1978.

Robert McDermott, Jr., Asst. U. S. Atty., Alexandria, Va., Donald G. Stouffer, Third Year Law Student (William B. Cummings, U. S. Atty., Justin W. Williams, Asst. U. S. Atty., and Gerald A. Toner, Sp. Asst. U. S. Atty., Alexandria, Va., on brief), for appellant.

Jack S. Rhoades, Alexandria, Va. (Jack B. Stevens, Howard, Stevens, Lynch, Cake & Howard, Alexandria, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

HAYNSWORTH, Chief Judge:

The defendant, a lawyer and member of the Philadelphia City Council, was convicted of a petty offense and fined $25 upon a charge that he had in his possession in his brief case a loaded revolver as he attempted to go through a check point preliminarily to boarding a plane at Washington National Airport. At the trial before a magistrate, he sought to defend upon the ground that he had thought that he had placed the loaded revolver in a suitcase which he had earlier checked at a ticket counter and that it was not in the brief case. The brief case contained only currency and the loaded revolver, and the defendant had resisted in-

spection of his brief case. The magistrate before whom he was tried found as a fact that the defendant did know the loaded revolver was in the brief case.

The conviction was for "willfully and knowingly" violating a regulation proscribing the possession of a weapon at the Washington National Airport.[1]

On appeal, the district judge held that there was no proof of willfulness. He stated "We have to assume that the 'willfully' was inserted . . . for some purpose. And willfully means voluntarily and intentionally and with the specific intent to do something you knew the law forbids."

The United States has brought the appeal here.

I.

Initially, we are met with a contention that the district court's direction of acquittal is not reviewable here because not expressly authorized by Congress. *See United States v. Sanges,* 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892).

In 18 U.S.C. § 3731, Congress has provided for appeals by the United States in criminal cases from orders of a district court dismissing an indictment or information unless the double jeopardy clause of the Constitution prohibits further prosecution. Moore suggests the statute is inapplicable because he was prosecuted on a violation notice and not upon an indictment of a grand jury or an information filed by the United States Attorney. With respect to misdemeanors and petty offenses committed on the Washington National Airport, a federal enclave, however, the violation notice is the functional equivalent of an indictment or an information. Moreover, in *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the Supreme Court reviewed the legislative history of the appeal statute and concluded that "Congress was determined to avoid creating nonconstitutional bars to the government's right to appeal." *Id.* at 339, 95 S.Ct. at

1.  14 C.F.R. § 151.191 and § 159.79 (1976).

1019. Thus *Wilson* foreclosed all further inquiry about the reach of the statute; only the constitutionality of the allowance of an appeal remains relevant. *See Sanabria v. United States*, 437 U.S. 54, 63, 98 S.Ct. 2170, 2178 n. 16, 57 L.Ed.2d 43 (1978); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *United States v. Burroughs*, 537 F.2d 1156, 1157 (4th Cir. 1976).

■ The district court in this case could not and did not conduct a trial *de novo*. It sat solely as an appellate court with the power to pass on questions of law. *See* Fed.R.Proc. for the Trial of Minor Offenses Before U. S. Magistrates 8(d). Indeed, the review of the magistrate's findings and conclusions supplied by the district court was identical in nature to the review we must undertake on this appeal. *See United States v. Peck*, 545 F.2d 962, 964 (5th Cir. 1977). Since, "it is well settled that an appellate court's order reversing a conviction is subject to further review even when the appellate court has ordered the indictment dismissed and the defendant discharged," *United States v. Wilson*, 420 U.S. at 345, 95 S.Ct. at 1022, the defendant's double jeopardy argument must fail.

## II.

■ The regulations do require that a punishable violation be committed with willfulness and knowledge, but the district court read too much into the word "willfully" when he concluded that use of the term required that the United States prove that his possession of the gun in the brief case be with a "specific intent to do something he knew the law forbids," a requirement that could be satisfied only by proof that he intended to employ the weapon in some other criminal conduct or that he knew of the existence and force of the regulation.

The regulation's requirement that it be done knowingly means that it must be proven that the defendant knew that the weap-

on was in the brief case, as the magistrate found.[2] The requirement that it be done willfully, in its ordinary connotation, means no more than that the act be done voluntarily. There would be no punishable violation, for instance, if an armed person were arrested and brought by police involuntarily on to the airport. Clearly the proof showed that the defendant was acting voluntarily, and in that sense, willfully, as he sought to board a plane for Philadelphia. Thus the dilemma the district judge thought he faced in ascribing some meaning to the term "willful" did not require the interpretation he gave it or the acquittal of the defendant.

Once before we have had occasion to consider the "knowingly and willfully" language contained in the National Airport regulations. In *Finn v. United States*, 256 F.2d 304 (4 Cir., 1958), an appeal from a prosecution for public profanity, the defendant challenged an indictment for failing to specifically charge knowledge or willfulness. In that case, this court stated:

> The answer to the question raised here depends on the meaning of "knowingly and willfully" in the particular statute. The words have no single fixed and uniform meaning. "Willful" has been held to be "a word of many meanings, its construction often being influenced by its context." . . . Sometimes it has been held to require that the act shall have been done with a bad purpose. . . . In other instances it has been held to connote no more than that the accused shall have intended to engage in the prohibited conduct. . . .
>
> In dealing with a simple act like using profane language, as distinguished from a complicated course of conduct which may be colored by its purpose, it is difficult to imagine that anything more was intended by the statute than that the accused shall have known that the words are profane and that he shall have uttered them voluntarily.

**2.** Seemingly there would have been a violation even if the weapon had been in the suitcase which was checked for shipment in the baggage compartment, for the regulation proscribes bringing such a weapon on to the airport and is not confined to the embarkation area.

Here, as in *Finn*, the defendant knew the gun was in his brief case and he voluntarily entered upon the airport premises and sought to pass through the screening area. He intended to commit the proscribed act, knowing at the time all of the relevant, attendant circumstances.

We find in the regulation no result-based culpability requirement. As with the profanity regulation construed in *Finn*, the conduct proscribed by § 159.79 constitutes "a simple act," rather than a "complicated course of conduct which may be colored by its purpose." The statute imposes no result requirement; nor does any logical culpability requirement relating to an evil design readily suggest itself. The only logically tenable culpability-as-to-result standard would require a showing that the defendant intended to use the carried weapon in further criminal activity. We refuse to read the provision so narrowly, for this construction neither comfortably fits the language of the regulation nor squares with the broad preventive policy that obviously underlies the measure. Moreover, the regulation's proscription of all weapons, whether or not concealed, suggests that its drafters were not so concerned with illicit motivations as with absolutely excluding all guns from the airport.

It is hardly conceivable that Moore did not know there were regulations against taking firearms aboard airplanes. There had been too many highly publicized instances of commandeered passenger planes for the public to have remained ignorant of them. There is a suggestion in the record that there were signs about it in the airport, and one observing prospective passengers having their hand luggage passed through x-ray machines and themselves passing through metal detection devices could hardly have been left unaware of the fact that it was weapons for which the security people were looking. Indeed, Moore never claimed that he was unaware of the regulation. The district judge acted on the basis that the record contains no proof by the United States that he was aware of it.

Even if Moore was unaware of the regulation, a punishable offense was committed. Modern codes generally confine the mistake of law defense to a narrow set of circumstances, giving rise to the criminal analogue of estoppel. *See* Model Penal Code § 2.04(3). Of course, one ought not to be punished if one reasonably relies upon a judicial decision later held to have been erroneous. But "[t]he rule that 'ignorance of the law will not excuse' . . . is deep in our law." *Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1947). And "[t]he principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation." *United States v. International Minerals & Chem. Corp.*, 402 U.S. 558, 563, 91 S.Ct. 1697, 1701, 29 L.Ed.2d 178 (1971).

Of course, there may be no conviction if the language and history of the statute establish a legislative intention that knowledge of the statute is an essential element of an offense. But this is a regulatory measure designed to secure the safety of the public traveling by air. It operates in an area in which, after the highly publicized seizures of flying passenger aircraft, regulations should have been anticipated and expected by any reasonable person. It is simply not a case in which knowledge of the law is an essential element of the offense, nor one in which a mistake of law supplies a defense.

The judgment of the district court is reversed, and the case is remanded with instructions to reinstate the judgment of conviction.

*REVERSED AND REMANDED.*