# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

      v.

RANDY S. STANTON,
          *Defendant-Appellee.*

No. 06-10519

D.C. No.
CV-05-00833-JCM

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
June 13, 2007—San Francisco, California

Filed August 31, 2007

Before: Alfred T. Goodwin, Jay S. Bybee, and
Milan D. Smith, Circuit Judges.

Opinion by Judge Goodwin

11147

**COUNSEL**

Peter S. Levitt, Assistant United States Attorney, Robert Ellman Appellate Chief, Las Vegas, Nevada, for the plaintiff-appellant.

John G. Watkins, Las Vegas, Nevada, for the defendant-appellee.

**OPINION**

GOODWIN, Circuit Judge:

A magistrate judge found Randy S. Stanton ("Stanton") guilty of driving while under the influence of alcohol to a degree that rendered him incapable of safe operation. On appeal from this conviction the district court reversed, holding

that insufficient evidence supported the magistrate's decision. The United States appeals the district court's ruling, contending that it erred by concluding that no rational trier of fact could have found Stanton guilty beyond a reasonable doubt. Stanton counters that we lack subject matter jurisdiction over the government's appeal; and, in the alternative, he argues that the government did not adduce sufficient evidence to support his conviction. We hold first that we have jurisdiction to hear this appeal. On the merits, we reverse the district court's order and remand for further proceedings.

## I.  BACKGROUND

Stanton's sufficiency of the evidence argument requires us to consider the entire record in the light most favorable to the prosecution, to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Accordingly, we discuss the record evidence in some depth.

The United States charged Stanton by criminal complaint with three offenses arising from his activities on the evening of April 13, 2004. Count One alleged that he operated a motor vehicle under the influence of alcohol, in violation of 36 C.F.R. § 4.23(a)(1). Count Two charged Stanton with operating a motor vehicle with a blood alcohol content ("BAC") of .08 grams or more, in violation of 36 C.F.R. § 4.23(a)(2), and Count Three charged him with speeding, in violation of 36 C.F.R. § 4.21(c). Stanton consented to trial by a magistrate, and proceeded to a two-day bench trial.

Trial evidence shows that on April 13, 2004, Stanton attended a wine tasting in Boulder City, Nevada, that began at approximately 6:15 p.m. Stanton consumed one to two ounces of at least four different wines at the tasting, and also had several one to two ounce "additional pours," or re-fills. Stanton left the wine tasting around 8:40 p.m., and went to a

restaurant. There he ordered a glass of wine around 9 p.m., finished his drink around 9:25 p.m., stopped briefly at his office, and then headed home.

National Park Service Ranger Lena Boesser-Koschmann ("Koschmann") was on patrol in the Lake Mead National Recreation Area that evening. At approximately 9:40 p.m. Koschmann clocked Stanton driving 70 miles an hour in a posted 45 mile an hour zone within the federal recreation area, and pulled the vehicle over. She approached the vehicle to inform Stanton that he had been speeding, and observed "a strong odor of an alcoholic beverage about his person." Koschmann also observed that "his eyes were bloodshot and watery," and that his speech was "very slow and deliberate." After Stanton stated that he had been drinking at a wine tasting, Koschmann asked him to step out of the vehicle and observed that "his balance was somewhat unsure as he walked toward the back of the vehicle."[1] Koschmann then conducted a set of field sobriety tests ("FSTs"), each of which indicated Stanton was intoxicated. During the "horizontal gaze nystagmus test," which measures involuntary eye movements, Koschmann observed four of a possible six clues indicating poor performance, and testified that she concluded "[t]here was a high probability that he had alcohol in his system, that it was effecting [sic] him." Stanton challenged the validity of these results, arguing they were tainted because he was looking directly into the headlights and emergency lights on Koschmann's vehicle during the test. Stanton also failed the "walk and turn test," during which Koschmann observed six of a possible eight clues indicating intoxication. Specifically, Koschmann testified that Stanton: lost his balance and stepped out of position while she gave instructions; stepped off line multiple times; used his arms for balance; stopped walking altogether at one point; turned incorrectly; and took an incorrect number of steps. Finally, Stanton failed the "one-leg

---

[1]Koschmann also made the "general observation" that Stanton was "swaying and wobbling" during the time he was outside of the vehicle.

stand test." Stanton exhibited all four clues this test examines (swaying, hopping, putting foot down, using arms to balance), and after he placed his foot on the ground a third time, Koschmann stopped the test because she "was concerned for his safety." Koschmann testified repeatedly that the tests were performed on a flat, paved surface on the side of the road, and also testified that the weather was clear and dry. Conversely, Stanton testified that the roadside testing took place on un-level ground, but at no time did he alert Koschmann to any problems or difficulties he had performing the tests.

Koschmann thereafter conducted a preliminary breath test ("PBT") at the scene, which indicated Stanton's BAC was .115.[2] Given the totality of the circumstances and her observations of Stanton, Koschmann placed him under arrest and took him to a nearby ranger station. At the station, approximately fifty minutes after the initial stop, Koschmann administered two breath tests using an Intoxilyzer machine. At trial Koschmann testified that Stanton blew a .141 on the first test, and a .144 on the second. However, the magistrate sustained a defense objection to any testimony about whether these results placed Stanton over the legal BAC limit, because the government had failed to lay a sufficient foundation for what the Intoxilyzer results represented. The magistrate later granted Stanton's Rule 29 motion for acquittal on Count Two.

On the night of his arrest, after being advised of his *Miranda* rights, Stanton stated that he had not eaten since having a protein shake that morning, that he had begun drinking at 6 p.m. that night, and — despite his own testimony about the 9 p.m. glass of wine at the restaurant — that he had his last drink of the evening at approximately 8 p.m. Stanton also stated that on a scale from one (low) to ten (high), "he

---

[2]A violation of 36 C.F.R. § 4.23(a)(2), charged as Count Two in this case, requires a BAC of .08 or more. The magistrate admitted Stanton's PBT result solely for its probative value to establish probable cause for arrest.

felt he was a four" with regard to the extent he was under the influence of alcohol. Finally, Stanton concluded, "I feel buzzed. I felt more of a buzz when you pulled me over."

Stanton also testified at trial before the magistrate. He stated that he had attended and partaken at the wine tasting, and later ordered the glass of wine at the restaurant. He also stated that he did not believe the wine placed him in a condition that he could not safely operate his vehicle. He also testified that he did not believe he was driving seventy miles an hour when Koschmann encountered him, that he told the ranger so, and that he generally travels five to ten miles per hour over the speed limit on that stretch of road.

At the close of evidence and argument, the magistrate gave a short verbal ruling on the two remaining counts. First, the magistrate convicted Stanton of the speeding charge in Count Three, stating that she was persuaded beyond a reasonable doubt that the government had proven its case. The magistrate also found Stanton guilty of Count One, holding that under the totality of circumstances he was incapable of safely operating his vehicle because of the degree to which he was under the influence of alcohol. The magistrate accepted Stanton's argument regarding the "horizontal gaze nystagmus test," and placed no weight on the test because it was "conducted under less than idea[l] circumstances." Nonetheless, the magistrate relied particularly on the Intoxilyzer results (which indicated Stanton had been drinking even if they did not conclusively show an above-limit BAC), Koschmann's field observations, the speed at which Stanton was driving, his disregard for the speed at which he was driving, and his post-custody statements that he was more intoxicated at the time of his stop than at the time he was questioned. Considering all the evidence adduced as a whole, the magistrate concluded that the government had proved its case on Count One, and found Stanton guilty of that charge. The magistrate then sentenced Stanton to a twelve-month term of unsupervised probation, a $500

fine, sixty-four hours of community service, and DUI counseling.

Stanton appealed to the district court, arguing insufficient evidence supported his conviction on Count One. In a one-page order the district court reversed, holding that considering the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of Count One beyond a reasonable doubt. The government's timely appeal — and Stanton's unsuccessful motion in this court to dismiss for lack of subject matter jurisdiction — followed.

## II.  DISCUSSION

### A.  Jurisdiction

[1] Stanton's contention that we lack jurisdiction to entertain the government's appeal is without merit. Stanton accurately identifies the fundamental rule that "the United States cannot appeal in a criminal case without express congressional authorization." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568 (1977). He also correctly points out that the governing statute, the Criminal Appeals Act, on its face authorizes the United States to appeal only from a "judgment . . . of a district court dismissing an indictment or information . . . except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." 18 U.S.C. § 3731. However, his argument flowing from these two basic premises is flawed.

Because express congressional authorization is required to support a government appeal in a criminal case, and because § 3731 does not on its face authorize the government to appeal from a district court order reversing a conviction entered by a magistrate, and ordering an entry of acquittal, Stanton argues that this court is stripped of jurisdiction. Although we have not yet addressed this issue, Stanton's posi-

tion is contrary to controlling Supreme Court authority, and to the jurisprudence of every other circuit that has considered the question.

In *United States v. Wilson*, 420 U.S. 332 (1975), the jury returned a guilty verdict that was subsequently vitiated by the trial court's post-verdict dismissal of the indictment on speedy trial grounds. 420 U.S. at 334. The government sought to appeal, but the Third Circuit held that because the district court's ruling was effectively an acquittal, the Double Jeopardy Clause prevented the government from constitutionally appealing the ruling. *Id.* at 335. Considering the present version of § 3731, which had recently undergone substantial revision, the Supreme Court first noted that the revised statute eliminated many of the prior limitations on the government's appeal rights. *Id.* at 336-37. In combination with the new language, the court considered at length the legislative history underlying the revised Act and determined it was "clear that Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *Id.* at 337. Because "Congress was determined to avoid creating nonconstitutional bars to the Government's right to appeal," the Court turned next to a lengthy double jeopardy analysis. *Id.* at 339. Having surveyed the evolution of double jeopardy jurisprudence, the Court concluded that "where there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended." *Id.* at 344. Because the jury had rendered a guilty verdict, and because reversal of the district court's order on appeal would do nothing more than reinstate that verdict, the appeal presented no threat of a successive prosecution or multiple punishments for the same offense. *Id.* at 344-45, 353. Accordingly, there was no double jeopardy violation, and the government was constitutionally free to bring the appeal under § 3731. *Id.* at 353.

The procedural posture in *Wilson* — a trial court's dismissal of an indictment — fit squarely within the terms of

§ 3731, regardless of the Court's broad interpretation of the statute. Just two years later, the Court gave a similarly broad construction to a different portion of the statute in *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977). In that case a "hopelessly deadlocked" jury was discharged after failing to reach a verdict. 430 U.S. at 565. After the jury's dismissal the district court granted the defendants' motions for judgment of acquittal under Federal Rule of Criminal Procedure 29, a decision from which the government sought appeal under § 3731. *Id.* at 566-67. Noting that the statute by its terms authorizes appeal from a "dismiss[al]" rather than "acquittal," the Court nonetheless followed the *Wilson* example of construing the statute broadly, stating that unless barred by the Constitution, Rule 29 acquittals may be appealed because "the form of the ruling is not dispositive of appealability in a statutory sense." *Id.* at 567 n.4; *see also id.* at 568. The Court then applied the *Wilson* constitutional analysis, beginning from the premise that since its common-law origins, double jeopardy protection has been "directed at the threat of multiple prosecutions, not at Government appeals, at least where those appeals would not require a new trial." *Id.* at 568-69 (quoting *Wilson*, 420 U.S. at 342). Because no guilty verdict was returned before the district court granted the defendants' motions for acquittal, reversing the district court would have necessarily created the threat of a second prosecution for the same act, in violation of the Double Jeopardy Clause. *Id.* at 569-70; 575-76. Accordingly, no appellate review was available under § 3731.

**[2]** Sitting as an appellate court reviewing the magistrate's decision, the district court here did not style its order as a Rule 29 acquittal. Instead, the district court stated that because of "the insufficiency of the evidence to support the finding of guilt on Count I," Stanton's conviction on that count was ordered reversed, and a finding of not guilty was ordered to be entered. Regardless of its form, the district court's order is clearly an acquittal in substance because it represents "a determination that the evidence was insufficient

to convict." *United States v. Ogles*, 440 F.3d 1095, 1103 (9th Cir. 2006) (en banc).

**[3]** Accordingly, under *Martin Linen* the district court's judgment of acquittal is appealable unless reversing the district court's order would violate the Double Jeopardy Clause. Stanton makes no argument on this point, nor can he. Because reversal of the district court's order would merely reinstate the guilty verdict entered by the magistrate, our review "does not offend the policy against multiple prosecution." *Wilson*, 420 U.S. at 345. Not only does this conclusion flow naturally from *Wilson* and *Martin Linen*, but it also aligns with the jurisprudence of the other circuits that have considered the issue, each of which has determined that § 3731 authorizes a government appeal where a district court either reverses a conviction entered by a magistrate (as here), or affirms a magistrate's judgment of acquittal after a jury verdict of guilty. *See United States v. Duncan*, 164 F.3d 239, 242 (5th Cir. 1999); *United States v. Aslam*, 936 F.2d 751, 754 (2d Cir. 1991); *United States v. Forcellati*, 610 F.2d 25, 29-30 (1st Cir. 1979); *United States v. Moore*, 586 F.2d 1029, 1031-32 (4th Cir. 1978).

**[4]** We dispose quickly of Stanton's other jurisdictional argument — that § 3731 does not apply because he was charged under a criminal complaint, rather than an indictment or information. The various charging documents are unquestionably distinct. *Compare* Fed. R. Crim. P. 3, *with* Fed. R. Crim. P. 6(f) *and* Fed. R. Crim. P. 7(c). However, Stanton's position cannot be reconciled with *Wilson*'s central holding that § 3731 should be applied to "allow appeals whenever the Constitution would permit." *Wilson*, 420 U.S. at 339. Nor can it be squared with the statutory mandate that § 3731 "shall be liberally construed to effectuate its purposes," which the Supreme Court has identified as "avoid[ing] creati[on] [of] nonconstitutional bars to the Government's right to appeal." *Id.* Stanton has simply shown no constitutional reason why § 3731 should not apply because he was charged under a

criminal complaint, rather than under an indictment or information. Accordingly, we join the Second and Fourth Circuits in holding that § 3731 authorizes a government appeal under the circumstances of this case. *See Aslam*, 936 F.2d at 754; *Moore*, 586 F.2d at 1031.

### B.   Sufficiency of the evidence

We next consider whether the district court erred by concluding that insufficient evidence existed to support Stanton's conviction on Count One.

On appeal to the district court, Stanton was not entitled to a trial *de novo*. Rather, the appropriate scope of the district court's review "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). That standard is familiar and well-defined. Claims of insufficient evidence are reviewed *de novo. United States v. Shipsey*, 363 F.3d 962, 971 n.8 (9th Cir. 2004). There is sufficient evidence to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. As *Jackson* explained, this deferential standard of review protects the trier of fact's responsibility to resolve conflicting testimony, weigh the evidence, and draw reasonable inferences from the evidence presented. *Id.* A reviewing court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318-19 (internal quotation marks and citation omitted). Rather, the reviewing court must respect the province of the trier of fact by considering all evidence in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the prosecution. *Wright v. West*, 505 U.S. 277, 296-97 (1992); *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1201 (9th Cir. 2000). Finally, "a reviewing court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affir-

matively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright*, 505 U.S. at 296-97 (internal quotation marks omitted).

To convict on Count One the magistrate was required to find beyond a reasonable doubt that Stanton: (1) was operating a vehicle; (2) while under the influence of alcohol; (3) to a degree that rendered him incapable of safe operation. 36 C.F.R. § 4.23(a)(1). The first two elements are not in dispute. Considering the evidence put on at trial in the light most favorable to the government, drawing all reasonable inferences therefrom and resolving any evidentiary conflicts in the government's favor, we hold that a rational trier of fact could have found beyond a reasonable doubt that Stanton was incapable of safely operating his vehicle.

**[5]** First, the record reflects that over the course of three hours Stanton consumed numerous glasses of at least four different wines. After having done so, he took a nighttime drive at seventy miles an hour — twenty-five miles per hour above the posted limit — and when he was pulled over he told Koschmann he did not think he was going that fast. The reasonable inferences arising from these facts alone support the magistrate's conclusion that Stanton "was speeding but wasn't paying attention to what his speedometer said."

**[6]** Second, Koschmann's observations of Stanton in the field significantly support the conviction. Koschmann, who had made between fifty and seventy-five stops for driving under the influence, and approximately twenty arrests, observed a "strong odor" of alcohol on Stanton's person. She also saw that his eyes were bloodshot and watery, and that his speech was very slow and deliberate. Furthermore, Koschmann observed that Stanton's balance was unsteady when he stepped out of the car, and that he generally swayed and wobbled during the course of her field evaluation. Although any of these factors — singly or collectively — might be

explained innocently, "the prosecution need not affirmatively rule out every hypothesis except that of guilt." *Wright*, 505 U.S. at 296 (internal quotation marks and citation omitted). Given the uncontroverted record evidence that Stanton had consumed wine consistently from 6-9 p.m., these field observations support the reasonable inference that Stanton was under the influence of alcohol to an unsafe degree.

**[7]** Objective evidence that Stanton failed two FSTs also supports the magistrate's verdict. Koschmann testified that Stanton failed all four portions of the "one-leg stand test," which the ranger ultimately stopped to ensure Stanton's safety. The record also shows that Stanton showed six of eight possible clues of intoxication during the "walk-and-turn test," in which evidence of two clues can generally establish impairment that makes driving unsafe. Furthermore, Koschmann explained the significance of the "walk-and-turn test" in that it tests "many of the same skills needed for driving," such as small muscle control, information processing, reaction, balance, coordination, and short-term memory. Stanton's admissions further support the magistrate's verdict. He does not dispute that after drinking from 6-9 p.m. that night he rated himself a "four" on a 1-10 scale of intoxication, nor does he dispute that he told the interviewing officer: "I feel buzzed. I felt more of a buzz when you pulled me over."

Viewing this body of evidence as a whole and in the light most favorable to the government, and drawing all reasonable inferences therefrom in the government's favor, Stanton cannot show that "*no rational trier of fact* could have found proof of guilt beyond a reasonable doubt." *Garcia v. Carey*, 395 F.3d 1099, 1102 (9th Cir. 2005) (quoting *Jackson*, 443 U.S. at 324). His arguments to the contrary may be disposed of quickly.

Stanton first contends the magistrate ignored numerous contradictions in Koschmann's testimony. However, to the extent any inconsistency bore on Koschmann's credibility it

can reasonably be inferred that the magistrate chose to credit the ranger's testimony, a function squarely within its province. *Alvarez-Valenzuela*, 231 F.3d at 1201-02. To the extent any inconsistency militates against a finding that the government carried its burden of proof, consideration of the evidence in this case in the light most favorable to the government, as discussed above, persuades us that a rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

Stanton also argues that the magistrate ignored evidence that the FSTs were conducted on un-level ground, and therefore are not trustworthy. However, record evidence also indicates that the tests were performed on a flat, dry, paved surface. Under binding precedent we must presume, "even if it does not affirmatively appear in the record," that the magistrate resolved this conflict in favor of the prosecution, and we must defer to that resolution. *Jackson*, 443 U.S. at 326.

Stanton did not object at trial to admitting the PBT results to establish probable cause, but objected to their use for any other purpose, and the magistrate admitted the results solely for the limited purpose of establishing probable cause to arrest. Even assuming that Stanton's failure to object to admission of the evidence for this limited purpose constitutes forfeiture, rather than waiver, plain error analysis applies. *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc). Simply, Stanton has not shown how the magistrate erred, much less plainly erred. Stanton's related argument that Koschmann did not have probable cause to arrest is similarly without merit. In addition to the PBT tests indicating his BAC was above the legal limit, Koschmann had observed Stanton's watery and bloodshot eyes, unsteady balance, slow speech, and strong odor of alcohol. She had also observed him fail two FSTs. Given the totality of the circumstances known to Koschmann at the time, there was a "fair probability that [the suspect] had committed a crime." *Peng v. Penghu*, 335 F.3d 970, 976 (9th Cir. 2003) (alteration in original).

Stanton also argues that the magistrate ignored evidence indicating that he was sober. However, as noted, we must presume that the magistrate resolved any conflict between evidence indicating sobriety and the substantial evidence indicating impairment, and resolved that conflict in favor of the prosecution. Moreover, we must defer to that resolution. *Wright*, 505 U.S. at 296-97.

**[8]** Given the record evidence, and all reasonable inferences arising therefrom, considered in the light most favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that Stanton was impaired to the point that he could not safely operate his vehicle. Accordingly, we reverse the district court's ruling to the contrary. On remand the district court is ordered to reinstate the magistrate's guilty verdict.

**REVERSED and REMANDED.**