2009 ND 53

**In the Interest of B.F., a Child**

**Reid A. Brady, Petitioner and Appellant**

v.

**J.F., T.F., and B.F., Respondents and Appellees.**

**No. 20080140.**

Supreme Court of North Dakota.

April 6, 2009.

Reid A. Brady (argued), Assistant State's Attorney and Renata J. Olafson–Selzer (appeared), Assistant State's Attorney, Fargo, N.D., for petitioner and appellant.

Bruce D. Quick (argued) and Mark A. Friese (on brief), Vogel Law Firm, Fargo, N.D., for respondents and appellees.

CROTHERS, Justice.

[¶ 1] Reid A. Brady, an assistant Cass County State's Attorney ("State"), appeals from a juvenile court order on review of a judicial referee's decision in which the court rejected the referee's determination of guilt and instead ruled B.F. did not commit the delinquent act of negligent homicide. Because the juvenile court judge's de novo review of the judicial referee's decision resulted in an acquittal and double jeopardy principles preclude the State from appealing an acquittal, we dismiss the appeal.

I

[¶ 2] At 2:30 p.m. on August 12, 2007, B.F., a 17–year–old male, was driving on a gravel road near Casselton with three of his friends in the front seat of B.F.'s Mazda pickup when the pickup collided with the back-end of a semi-trailer that was crossing an intersection. One of B.F.'s passengers died and another passenger was injured as a result of the collision. The State subsequently petitioned the juvenile court to have B.F. declared delinquent based on his having committed the

crimes of aggravated reckless driving in violation of N.D.C.C. § 39–08–03 and negligent homicide in violation of N.D.C.C. § 12.1–16–03. Following a trial before a judicial referee in February 2008, B.F. was found guilty of both charges. The judicial referee found that B.F. committed the delinquent act of negligent homicide because B.F. was driving in excess of 69 miles per hour in a 55 mile-per-hour zone when he "slammed on his brakes" and skidded 263 feet into the semi-truck; that there was "insufficient seating and seatbelts for all passengers" in the pickup; that B.F. failed to reduce his speed and yield when approaching the intersection, all in violation of state motor vehicle laws; and that B.F.'s conduct was "beyond carelessness and constitutes a gross deviation from acceptable standards of conduct."

[¶ 3] B.F. did not challenge the judicial referee's finding that he was guilty of the delinquent act of aggravated reckless driving, but he did request that the juvenile court judge review the referee's finding that he committed the delinquent act of negligent homicide. After conducting a de novo review of the record as required under N.D. Sup.Ct. Admin. R. 13, § 11(b), the juvenile court judge concluded B.F.'s conduct did not rise to the level of negligent homicide. The juvenile court judge reasoned:

> "For the most part, the factual circumstances here are not in dispute. The Court finds the Referee's rationale for adopting the accident reconstructionist's reasoning persuasive. The Court, then, accepts that [B.F.] was traveling at 69 miles per hour in a 55 mile per hour zone. The Referee's other Factual Findings with respect to the attendant circumstances were not disputed, so the Court adopts them as well.

> "While the Court does not take issue with respect to the Referee's Findings of Fact concerning the attendant circumstances, the Court takes issue with the Referee's ultimate conclusion finding criminal negligence.

> "The Court understands [B.F.] may have committed several statutory violations: N.D.C.C. § 39–09–02(1)(f), 69 miles per hour in a 55 mile per hour zone; N.D.C.C. § 39–10–54(1), prohibiting driving when there are more than three persons in the front seat and the driver's view is obstructed as a result; and N.D.C.C. § 39–10–22, requiring the driver of the vehicle on the left to yield the right of way to the vehicle on the right in uncontrolled intersections. Further, [B.F.] had the responsibility to take into account the obstructed intersection. Although he failed in that regard, as an aside, the Court notes the failure of the landlord to clear the obstruction and the failure of the responsible governmental subdivision to erect cautionary signage. Had these obligations been met, we might have had an altogether different result.

> "The Court declines to view this matter as a series of statutory violations which led to a death, with each violation assigned a level of negligence to be added together. Each statutory violation is not of equal weight when considering [B.F.'s] negligence. Instead, the Court chooses to view this accident as a singular occurrence. [B.F.] was traveling at [a] rate of speed which was unsafe for this particular intersection under these particular circumstances. [B.F.'s] failure to yield is of minimal evidentiary value because such a failure was a direct result of the speed in which he approached the intersection. The failure to yield is another way of saying [B.F.] approached the intersection in an unsafe manner—it is not necessarily additional evidence of negligence. Thus, the Court is left with 14 miles per hour over the

limit with obstructed views of cross-bound traffic."

The juvenile court judge found that B.F.'s conduct "showed inadvertence to the risk of another's death," but that it "was not a gross deviation from acceptable standards of conduct." The juvenile court judge found B.F. "did not commit the delinquent act of negligent homicide," and the State appealed to this Court under N.D.C.C. § 27–20–56(1).

## II

[¶ 4] B.F. argues the State's appeal should be dismissed because any further proceedings against him are barred by double jeopardy.

[¶ 5] Section 27–20–56(1), N.D.C.C., provides that "[a]n aggrieved party, including the state or a subdivision of the state, may appeal from a final order, judgment, or decree of the juvenile court to the supreme court ... [and][t]he appeal must be heard by the supreme court upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court."

[¶ 6] The State may not appeal from an acquittal in a criminal case. *See State v. Jackson,* 2005 ND 137, ¶ 5, 701 N.W.2d 887; *State v. Flohr,* 259 N.W.2d 293, 296 (N.D.1977). When an appellate or trial court " 'concludes that evidence is legally insufficient to support a guilty verdict, it concludes that the prosecution has failed to produce sufficient evidence to prove its case. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars retrial in such a case.' " *State v. Rogers,* 2007 ND 68, ¶ 11, 730 N.W.2d 859 (quoting *State v. Yineman,* 2002 ND 145, ¶ 8, 651 N.W.2d 648). Double jeopardy principles apply to juvenile court proceedings involving adjudication of delinquent acts. *See Interest of L.B.B.,* 2005 ND 220, ¶ 10, 707 N.W.2d 469; *see also Breed v. Jones,* 421 U.S. 519, 531, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).

[¶ 7] This Court has not addressed whether double jeopardy principles bar the State from appealing after the juvenile court judge upon request for review sets aside a judicial referee's determination that a juvenile committed a delinquent act. The situation arose in *Interest of K.S.,* 500 N.W.2d 603, 604 n. 1 (N.D.1993), but "[n]o double jeopardy question ha[d] been raised" in that case. The State argues the double jeopardy clause is not violated here, because if the State prevailed in this appeal, the referee's decision could simply be reinstated and there would be no need for a retrial. The State relies on *Sanabria v. United States,* 437 U.S. 54, 63, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (footnote omitted), in which the United States Supreme Court noted that "the primary purpose of the Double Jeopardy Clause was to prevent successive trials, and not Government appeals *per se,*" and stated that "where an indictment is dismissed *after* a guilty verdict is rendered, the Double Jeopardy Clause d[oes] not bar an appeal since the verdict could simply be reinstated without a new trial if the Government were successful." *See also United States v. Wilson,* 420 U.S. 332, 345, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). The State also relies on several federal courts of appeals decisions holding the government is permitted to appeal from a federal district court's reversal of a judgment of conviction entered by a magistrate judge because the double jeopardy clause is not violated by an appeal that results in reinstatement of a guilty verdict. *See United States v. Stanton,* 501 F.3d 1093, 1098 (9th Cir.2007); *United States v. Aslam,* 936 F.2d 751, 754 (2d Cir.1991); *United States v. Bjerke,* 796 F.2d 643, 646 (3d Cir.1986); *United States v. Forcellati,* 610 F.2d 25, 29 (1st Cir.1979);

*United States v. Moore,* 586 F.2d 1029, 1032 (4th Cir.1978).

[¶ 8] The federal circuit court cases relied upon by the State are not persuasive because the procedure for a federal district court's review of a magistrate's decision differs substantially from the current procedure for a state district court's review of a judicial referee's decision in North Dakota. The scope of appeal from a magistrate's order or judgment to a federal district court is outlined in Fed. R.Crim.P. 58(g)(2)(D), which provides:

> "(D) Scope of Appeal. The defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."

The federal courts, as well as state courts employing a similar procedure, have stressed it is the true appellate nature of the district court's review of a magistrate's decision, as opposed to a de novo review by the district court, that allows the government to appeal a district court's decision reversing a magistrate's finding of guilt without offending double jeopardy principles. *See, e.g., Stanton,* 501 F.3d at 1098 (district court sits "as an appellate court reviewing the magistrate's decision"); *Moore,* 586 F.2d at 1032 ("The district court in this case could not and did not conduct a trial De novo. It sat solely as an appellate court with the power to pass on questions of law ... Indeed, the review of the magistrate's findings and conclusions supplied by the district court was identical in nature to the review we must undertake on this appeal."); *Interest of J.G.,* 97 P.3d 300, 302 (Colo.Ct.App.2004) ("[B]ecause the district court reviews only the record of the hearing before the magistrate, its review is similar to an appellate review of the magistrate's decision.... [O]ur review of the trial court's reversal of

the magistrate's judgment is similar to a second level of appellate review."); *State v. Keehner,* 425 N.W.2d 41, 46 (Iowa 1988) ("Implicit in the district court's subsequent 'reversal' of [the magistrate's finding of guilt] is the fact that the court was sitting in its appellate capacity.... A 1982 revision of rule 54 provided that appeals such as Keehner's are not tried de novo in the district court.").

[¶ 9] The standard of review of a judicial referee's decision by a district court in North Dakota has changed over the years. Before 2004 the standard of review was more akin to a district court, like the federal district courts, sitting in an appellate capacity, and is described in *Interest of D.Q.:*

> " '[A] district court's review of a judicial referee's findings and recommendations under Administrative Rule 13, § 11(b), when it is a review of the record, is governed by Rule 53, N.D.R.Civ. P.' *Benson v. Benson,* 495 N.W.2d 72, 77 (N.D.1993). 'Under Rule 53(f)(2), N.D.R.Civ.P., the district court was obliged to accept the referee's findings unless they were clearly erroneous.... The correctness of a referee's findings is an issue that must be determined by the district court in the first instance.' *Benson,* at 78. When the district court rejects a judicial referee's factual findings, this Court employs a two-step review of the district court's factual determinations:

> > First, we must review, as a matter of law, the correctness of the district court's reversal, under the clearly erroneous standard, of any factual findings by the judicial referee. Second, if the district court's reversal of findings is upheld, we must then review the substitute or additional findings of the district court under the clearly

erroneous standard of Rule 52(a), N.D.R.Civ.P.

*Benson,* at 77. *See also Darling v. Gosselin,* 1999 ND 8, ¶ 6, 589 N.W.2d 192; *Throndset v. Hawkenson,* 532 N.W.2d 394, 397 (N.D.1995). A judicial referee's conclusions of law are fully reviewable in the district court, and the district court's conclusions of law are fully reviewable upon appeal to this Court. *Darling,* at ¶ 6."

2002 ND 188, ¶ 8, 653 N.W.2d 713.

[¶ 10] In 2003 the Joint Procedure Committee addressed the absence of a standard of review in N.D. Sup.Ct. Admin. R. 13 and amendments were drafted to change the rule. The minutes of the Joint Procedure Committee reflect that committee members were not satisfied with the standard of review set forth in *Interest of D.Q.,* 2002 ND 188, ¶ 8, 653 N.W.2d 713. The minutes state:

"A member stated that judges should be able to use their discretion to overturn referee decisions. The member said that it was inappropriate to impose a 'clearly erroneous' standard on judges reviewing referee decisions. The member suggested that the district court be allowed to review referee decisions on a de novo basis.

"The member said that it would be appropriate for the Supreme Court to apply a clearly erroneous standard to a district court's findings, but a district court needs to be able to exercise more authority over a referee's findings. The member said that the main problem with the rule was that there was no standard set out at all.

. . . .

"A member indicated that 'de novo on the record' might be an appropriate formulation of the standard that should apply. A member indicated that the court should be able to hold a hearing if necessary to gather additional information. Another member pointed out that a referee's decision is considered final, and no review by the district court [is] done at all, if no party challenges the decision in a set period of time.

. . . .

"Another member said that district courts should be allowed to adopt referee findings as appropriate and to make additional findings of its own—any findings that ultimately come out of the district court would be considered the district court's findings."

*Minutes of the Joint Procedure Comm.* 21–22 (January 30–31, 2003).

[¶ 11] Effective March 1, 2004, N.D. Sup.Ct. Admin. R. 13, § 11 was amended to provide:

"(b) The review by a district court judge must be a de novo review of the record. The district court may:

(1) adopt the referee's findings;

(2) remand to the referee for additional findings; or

(3) reject the referee's findings.

"(c) If the district court judge rejects the referee's findings, the court shall issue its own findings of fact, with or without a hearing."

[¶ 12] Under N.D. Sup.Ct. Admin. R. 13, § 10(a), "[t]he findings and order of the judicial referee have the effect of an order of the district court until superseded by a written order of a district court judge." Under N.D. Sup.Ct. Admin. R. 13, § 11(a), "[a] review of the findings and order may be ordered at any time by a district court judge and must be ordered if a party files a written request for review within five days after service" of the written notice of the right of review. Under the North Dakota system, the juvenile court judge in

reviewing a judicial referee's decision does not act in a true appellate capacity.

[¶ 13] The United States Supreme Court's decision in *Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978), is instructive. In *Swisher*, the Court considered a class action claim that double jeopardy prevented the state of Maryland from filing exceptions with the state juvenile court to proposed nondelinquency findings and recommendations made by masters of that court. *Id.* at 206, 98 S.Ct. 2699. Under the Maryland scheme, masters would make proposed findings, conclusions, and recommendations, and the findings were submitted to the juvenile court judge who could accept, reject or modify the master's proposals. *Id.* at 210–11, 98 S.Ct. 2699. The juvenile but not the state could elect a de novo hearing before the juvenile court judge. *Id.* at 211, 98 S.Ct. 2699. The juvenile court judge could act on the state's exceptions only on the basis of the record made before the master, but the judge could receive new evidence if the parties did not object. *Id.* The Supreme Court suggested that jeopardy attached during the hearing before the master, *id.* at 215 n. 12, 98 S.Ct. 2699, but held a judge's review of a master's findings did not violate double jeopardy principles under the circumstances. *Id.* at 219, 98 S.Ct. 2699. The court held that "Maryland has created a system ... in which an accused juvenile is subjected to a single proceeding which begins with a master's hearing and culminates with an adjudication by a judge." *Id.* at 215, 98 S.Ct. 2699. The Court said:

"[I]t is for the State, not the parties, to designate and empower the factfinder and adjudicator. And here Maryland has conferred those roles only on the Juvenile Court judge. Thus, regardless of which party is initially favored by the master's proposals, and regardless of the presence or absence of exceptions, the judge is empowered to accept, modify, or reject those proposals."

*Id.* at 216, 98 S.Ct. 2699 (footnote omitted). In upholding Maryland's scheme, the Court considered the amount of adjudicatory power given the juvenile court over the master's findings and recommendations significant. The Supreme Court has since interpreted *Swisher* as recognizing "that the initial jeopardy does not end until there is a *final* decision." *Smith v. Massachusetts*, 543 U.S. 462, 469 n. 4, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005); *see also Interest of L.B.B.*, 2005 ND 220, ¶ 10, 707 N.W.2d 469 (" 'a proceeding under the juvenile system which has reached final disposition constitutes jeopardy' ") (quoting *State v. Berger*, 235 N.W.2d 254, 262 (N.D.1975)).

[¶ 14] Under these principles, courts have held that double jeopardy bars the prosecution from requesting a trial de novo in court following an acquittal by a magistrate or referee only if the statutory scheme operates as two separate proceedings. *See Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 312, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) (under two-tier system, if defendant "is acquitted at the first trial, he cannot be retried"); *State v. William P.*, 41 Conn.Supp. 356, 575 A.2d 715, 718 (1990) (under two-tier system, provision "that the state may move for a trial de novo after an acquittal by the magistrate" violates the double jeopardy clause); *State v. Bennion*, 115 Idaho 181, 765 P.2d 692, 695 (App.1988) (under two-tier system, prosecution "terminated when the magistrate found [defendant] not guilty and dismissed the citation" in the judgment); *State v. Derusseau*, 25 Kan.App.2d 544, 966 P.2d 694, 698 (1998) (under two-tier system, defendant could not be reprosecuted on de novo appeal to court for charge he had been acquitted of by magistrate); *see also State v. Campbell*, 7 Md.App. 538,

256 A.2d 537, 538 (1969) ("acquittal before a magistrate having jurisdiction to try the case and to impose punishment . . . operates as a bar to a subsequent prosecution for the same offense by a court").

[¶ 15] North Dakota's system does not operate as two distinct proceedings. Although under N.D. Sup.Ct. Admin. R. 13, § 10(a), a judicial referee's findings and order can have the effect of a final order of the juvenile court, that occurs only if it is not superseded by a written order of the juvenile court judge, and under N.D. Sup. Ct. Admin. R. 13, § 11(a), the judge may review the referee's findings and order on its own motion and must conduct a review if timely requested by a party. Under N.D. Sup.Ct. Admin. R. 13, § 11, the juvenile court judge does not sit as an appellate court, but conducts a de novo review of the record and has the authority to adopt or reject the referee's findings and issue its own findings with or without a hearing. The referee's findings and order do not become a final disposition unless they are left undisturbed by the juvenile court judge. When the juvenile court judge reviews the referee's findings and order, the findings and order survive only to the extent the judge chooses to adopt them. Upon review, the referee's findings and order constitute recommendations to the juvenile court judge. The juvenile court judge is given the ultimate authority to be the factfinder and adjudicator and to issue a final disposition. Once the juvenile court judge issues a final order, there remains no decision of the referee to reinstate if this Court were to reverse the juvenile court judge's decision.

[¶ 16] There is no question that the juvenile court judge's decision constitutes an acquittal because it clearly " 'represents a resolution of a factual element of the charged offense.' " *City of Bismarck v. Uhden,* 513 N.W.2d 373, 380 (N.D.1994) (quoting *City of Dickinson v. Kraft,* 472 N.W.2d 441, 444 (N.D.1991)). Unlike the judicial referee, the juvenile court judge did not view B.F.'s conduct as amounting to "a gross deviation from acceptable standards of conduct," which is a factual element required to establish the crime of negligent homicide under N.D.C.C. §§ 12.1–16–03 and 12.1–02–02(1)(d). The juvenile court judge acquitted B.F. of the delinquent act of negligent homicide. Notwithstanding N.D.C.C. § 27–20–56(1) provides the State may appeal from a final order of the juvenile court, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars the State from appealing the juvenile court judge's order acquitting B.F. and rejecting the judicial referee's determination of guilt.

### III

[¶ 17] B.F. argues he is entitled to double costs and attorney fees under N.D.R.App.P. 38 because the State's appeal is frivolous. The double jeopardy issue raised was a question of first impression in this jurisdiction. We conclude the appeal is not frivolous and deny B.F.'s request.

### IV

[¶ 18] The appeal is dismissed.

[¶ 19] GERALD W. VANDE WALLE, C.J., ROBERT O. WEFALD, D.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 20] The Honorable ROBERT O. WEFALD, D.J., sitting in place of KAPSNER, J., disqualified.