**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ALEXANDER POPOV,
*Defendant-Appellant*.

No. 12-10045

D.C. No.
2:08-cr-00427-
MCE-6

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

RAMANATHAN PRAKASH,
*Defendant-Appellant*.

No. 12-10553

D.C. No.
2:08-cr-00427-
MCE-7

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Argued and Submitted
November 5, 2013—San Francisco, California

Filed February 11, 2014

Before: Stephen Reinhardt and Paul J. Watford, Circuit
Judges, and Robert S. Lasnik, District Judge.[*]

Opinion by Judge Lasnik

---

### SUMMARY[**]

---

### Criminal Law

The panel reversed the district court's findings regarding
the amount of loss and remanded for resentencing, in a case
in which the defendants were convicted of conspiracy to
commit health care fraud in violation of 18 U.S.C. §§ 1347
and 1349, and health care fraud in violation of 18 U.S.C.
§ 1347, arising from the submission of fraudulent bills to
Medicare.

The defendants argued that the district court erred in
finding that the intended loss was the amount billed to
Medicare, rather than the amount Medicare actually paid.

The panel held that in health care fraud cases, the amount
billed to an insurer shall constitute prima facie evidence of
intended loss for sentencing purposes, and if not rebutted,
shall constitute sufficient evidence to establish the intended
loss by a preponderance of the evidence, but that the parties

---

[*] The Honorable Robert S. Lasnik, District Judge for the U.S. District
Court for the Western District of Washington, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

may introduce additional evidence to support arguments that the amount billed overestimates or understates the defendant's intent. Because the record left the panel uncertain as to what the district court understood the law to be, and there is evidence suggesting that the defendants may have been aware that Medicare only pays a fixed amount, the panel vacated the sentences and remanded for resentencing on this issue.

Regarding defendant Prakash's argument that he should not be held accountable in the loss calculation for claims submitted to Medicare under defendant Popov's provider number, the panel held that the evidence in the record was sufficient to support the district court's finding that Popov's bills to Medicare were foreseeable to Prakash.

The panel addressed other claims in a memorandum disposition wherein the panel affirmed the district court.

## COUNSEL

Karen L. Landau, Oakland, California, for Defendant-Appellant Alexander Popov.

James W. Spertus, Spertus, Landes & Umhofer, LLP, Los Angeles, California, for Defendant-Appellant Ramanathan Prakash.

Philip A. Ferrari and Jean M. Hobler, Assistant United States Attorneys, Office of the United States Attorney for the Eastern District of California, Sacramento, California, for Plaintiff-Appellee United States of America.

**OPINION**

LASNIK, District Judge:

Defendants-Appellants Ramanathan Prakash and Alexander Popov were convicted of one count of conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, and three counts of health care fraud in violation of 18 U.S.C. § 1347, following a jury trial. On appeal, Appellants challenge their sentences, arguing that the district court erred in calculating the amount of loss for sentencing purposes.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the district court's findings regarding the amount of loss and remand for resentencing.

**BACKGROUND**

On May 20, 2010, Popov and Prakash were indicted, along with nine co-defendants, on one count of conspiracy to commit health care fraud and several counts of health care fraud. The Superseding Indictment alleged that Appellants' co-defendant, Vardges Egiazarian, owned and operated three medical clinics in Northern California that submitted fraudulent bills to Medicare for more than $5 million.

**A. Medicare**

Medicare is a federally funded program that provides limited health insurance to persons over the age of 65 and

---

[1] We address Appellants' other claims and the claims raised by Lana LeChabrier, Appellants' co-defendant, regarding their convictions and sentences in a separate unpublished memorandum disposition filed simultaneously with this opinion wherein we affirm the district court.

disabled people who meet its qualifications. 42 U.S.C. § 1395(o). Medicare Part A covers inpatient hospital and nursing facility care, *id.* § 1395c, while Part B covers outpatient services and equipment, *id.* § 1395k. Medicare coverage is limited to services that are medically "reasonable and necessary." *Id.* § 1395y(a)(1)(A). Participating providers are required to ensure that any services rendered to Medicare recipients are supported by sufficient evidence of medical necessity. *Id.* § 1320c-5(a)(1).

Before a provider may submit a claim for reimbursement, he or she must apply for and obtain a Medicare provider number for a particular clinic or hospital. *Id.* § 1320d-2(b); 45 C.F.R. § 162.410. Once enrolled, a Medicare service provider may submit claims for reimbursement for covered services. 45 C.F.R. § 424.505. Medicare may pay the claim in whole or in part, or deny the claim in whole or in part. Medicare assigns an allowed amount to each of its covered services pursuant to a fixed fee schedule and pays the provider approximately eighty percent of the allowed amount. 42 U.S.C. § 1395*l*(a)(1); 42 C.F.R. §§ 405.501, 410.152(b). The provider may pursue recovery of the remaining twenty percent of the allowed amount from the patient directly. 42 U.S.C. § 1395*l*(a)(1). Regardless of the amount the provider bills Medicare, the total amount a provider may recover is the allowed amount set by the fixed fee schedule.

A provider may appeal the initial determination of coverage and the allowed amount by requesting a redetermination by the fiscal intermediary. 42 C.F.R. § 405.904. Generally, a provider attaches additional patient records to the request for redetermination to support the claim.

**B. The Scheme**

During the three week trial, the government presented evidence that Egiazarian owned all or part of the three health care clinics.  The clinics paid "cappers" to recruit patients and drive them to the clinics.   Patients arrived in groups consisting primarily of non-English speaking, elderly or disabled individuals and they stayed less than two hours. During those two hours, each new patient had an electrocardiogram and all patients underwent ultrasounds and had blood drawn.

At the Sacramento clinic, co-defendant Sol Teitelbaum, a physician who was not a certified Medicare provider, examined some of the patients, but he did not see all of them. Regardless of which patients Teitelbaum actually examined, Sofia Tosunyan, the office manager for the Sacramento clinic, updated all of the patient charts and Teitelbaum signed them. In the event that clinic employees were unable to perform the requisite tests on the patients, they drew blood and performed the tests on each other and placed the results in patient files. After clinic employees updated the charts with diagnoses, test results, and notes, they sent the charts to Southern California to be signed by Medicare providers.

Appellants' involvement was limited to the operations of the Sacramento clinic.   They applied for and received Medicare provider identification numbers for the clinic and opened bank accounts in their own names to receive Medicare payments.  Even though neither Popov nor Prakash ever examined or met a patient, they visited Egiazarian's office in Los Angeles, California, on a near weekly basis to sign patient charts, Medicare claim forms, and blank Medicare Redetermination Request forms.   They received

approximately twenty percent of the total amount reimbursed by Medicare under their provider numbers.

The Sacramento clinic sought reimbursement from Medicare for the total amount of $2,236,332.88. The amount allowed by Medicare was $747,961.31 and the amount paid was $586,430.72. The clinic submitted claims under Popov's provider number in the amount of $1,079,862.22. The allowed amount for these claims was $361,994.25, of which Medicare paid $283,660.26, slightly less than eighty percent of the allowed amount. The total amount billed to Medicare under Prakash's provider number was $1,156,470.66. The allowed amount was $385,967.06 and the amount paid was $302,770.46, also slightly less than eighty percent of the allowed amount. On July 8, 2011, the jury found Popov and Prakash guilty of all counts against them.

On January 12, 2012, the district court sentenced Popov to 97 months of imprisonment, the low end of the applicable advisory guideline range, followed by three years of supervised release. The court also ordered Popov to pay $607,456.80 in restitution. The court adopted the offense level calculations, criminal history category, and guideline range set forth in the presentence report. In doing so, the court rejected Popov's objections to the presentence report's intended loss calculation and applied a sixteen-level enhancement based on its finding that the intended loss was $2,236,332.88, the total amount billed to Medicare by Popov and Prakash for the Sacramento clinic.

The district court also applied a sixteen-level enhancement to Prakash based on an intended loss amount of $2,236,332.88. Despite Prakash's argument that the intended loss should be eighty percent of the allowed amount for

claims under his number only, the district court adopted the facts, offense level calculations, and applicable advisory guideline range set forth in the amended presentence report. Based on those findings and a criminal history category of I, the district court imposed the statutory maximum prison sentence of 120 months followed by three years of supervised release.[2]  The court also ordered Prakash to pay $607,456.80 in restitution.

## STANDARD OF REVIEW

We review a district court's construction and interpretation of the United States Sentencing Guidelines Manual ("Guidelines") de novo and its application of the Guidelines to the facts for abuse of discretion. *United States v. Gomez-Leon*, 545 F.3d 777, 782 (9th Cir. 2008).

A district court's factual determinations, including the amount of loss in cases of fraud, are reviewed for clear error. *United States v. Tulaner*, 512 F.3d 576, 578 (9th Cir. 2008). "Clear error review is significantly deferential and requires us to accept the district court's findings absent a definite and firm conviction that a mistake has been committed." *Leavitt v. Arave*, 646 F.3d 605, 608 (9th Cir. 2011) (internal quotation marks and citation omitted).  "[A]ll that is required is that the government prove the loss by a preponderance of the evidence." *United States v. Torlai*, 728 F.3d 932, 946 n.13 (9th Cir. 2013).

---

[2] The applicable advisory guideline range was 97–121 months. However, the statutory maximum prison term for health care fraud that does not result in serious bodily injury is 120 months.  18 U.S.C. § 1347(a)(2).

## DISCUSSION

### A. Intended Loss

The amount of loss resulting from health care fraud is a specific offense characteristic that increases the defendant's offense level pursuant to the Guidelines. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B1.1.**[3]** Although the Guidelines are not mandatory, a district court must begin sentencing proceedings by calculating the applicable Guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

Section 2B1.1 of the Guidelines provides that the applicable loss is the greater of the actual loss or the intended loss. U.S.S.G. § 2B1.1 cmt. n. 3(A). "Actual loss" means "the reasonably foreseeable pecuniary harm that resulted from the offense," while "intended loss" means "the pecuniary harm that was intended to result from the offense." *Id.* § 2B1.1 cmt. n. 3(A)(I)–(ii). Notably, intended loss includes "intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value.)." *Id.* § 2B1.1 cmt. n. 3(A)(ii).

---

**[3]** The 2007 Guidelines were used to determine the applicable advisory range for each defendant. All references to the Guidelines are to the 2007 edition unless otherwise stated.

Appellants Popov and Prakash argue that the district court erred in finding that the intended loss was the amount billed to Medicare, rather than the amount Medicare actually paid. They contend that the total amount billed overstates the intended loss because they could not have expected to receive that amount, given that Medicare caps the amount of payment for each service performed. Because it is well known that Medicare routinely pays much less than the billed amount, they argue that the district court should have calculated the intended loss based on the amounts actually paid by Medicare.

Although this court has yet to publish an opinion addressing the appropriate measure of loss for sentencing purposes in health care fraud cases, several of our sister circuits have considered the question. For example, in *United States v. Miller*, the Fourth Circuit determined that a district court may rely on the amount billed to Medicare and Medicaid in a health care fraud case as prima facie evidence of the loss the defendant intended to cause. 316 F.3d 495, 504 (4th Cir. 2003). "As anyone who has received a bill well knows, the presumptive purposes of a bill is to notify the recipient of the amount to be paid." *Id.* However, the amount billed is not conclusive evidence of intended loss. *Id.* at 503–04. Parties may introduce additional evidence to support their positions that the amount billed either exaggerates or understates the defendant's intent. *Id.* at 504.

Several other circuit courts have adopted this burden-shifting framework to determine the defendant's intended loss for sentencing in the health care fraud context. *E.g.*, *United States v. Isiwele*, 635 F.3d 196, 203 (5th Cir. 2011); *United States v. Singh*, 390 F.3d 168, 194 (2d Cir. 2004). In *Isiwele*, the district court applied a fourteen-level increase to the

defendant's base offense level after finding that the intended loss was the total amount billed to Medicare and Medicaid. *Id.* at 199. On appeal, the Fifth Circuit expressly adopted the approach taken in *Miller*, and remanded the case for resentencing on the loss issue based on the lack of clarity regarding the standard for determining loss and the evidence in the record suggesting that the defendant intended to receive only the capped amount. *Id.* at 203.

Similarly, in *Singh*, the Second Circuit followed this approach in a health care fraud case in which the defendant took the witness stand at trial. 390 F.3d at 194. During the trial in that case, the defendant testified about his medical practice, but he did not testify about the amount of money he expected to receive from Medicare. *Id.* Because the evidence in the record supported a finding that the defendant was intimately familiar with Medicare's fixed rate billing practices, the court vacated the sentence with regard to the calculation of loss amount to allow the defendant an opportunity to show that the amount he intended to receive from the insurers was less than the total amount he billed. *Id.* at 193–94.

Consistent with this approach, the 2011 amendments to the Guidelines altered Application Note 3 to § 2B1.1 to address this situation. Application Note 3(F)(viii) now instructs districts courts that in health care fraud cases involving a Government health care program, "the aggregate dollar amount of fraudulent bills submitted to the Government health care program shall constitute prima facie evidence of the amount of the intended loss." U.S.S.G. § 2B1.1, cmt. n. 3(F)(viii) (2013).

In light of the express instructions in the current Guidelines and the way in which the burden shifting framework has been applied by our sister circuits, we now join those courts. In health care fraud cases, the amount billed to an insurer shall constitute prima facie evidence of intended loss for sentencing purposes. If not rebutted, this evidence shall constitute sufficient evidence to establish the intended loss by a preponderance of evidence. However, the parties may introduce additional evidence to support arguments that the amount billed overestimates or understates the defendant's intent.

Because the record below leaves us uncertain as to what the district court understood the law to be with respect to calculating intended loss for sentencing purposes and there is evidence suggesting that Popov and Prakash may have been aware that Medicare only pays a fixed amount, we vacate Popov's and Prakash's sentences and remand for resentencing on this issue consistent with the standard set forth above. The court may utilize all evidence presented at trial and sentencing. The parties may present additional evidence for resentencing on the issue of intended loss.

## B. Foreseeable Loss

In addition to challenging the court's intended loss calculation, Prakash argues that he should not be held accountable for claims submitted to Medicare under Popov's provider number. He contends that he did not know Popov and was not aware that Popov was billing Medicare for the Sacramento clinic. Thus, he argues that Popov's claims for reimbursement were not foreseeable to him. This argument is not persuasive.

When calculating loss attributable to a defendant on the basis of a conspiracy, the Guidelines provide that the relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). "The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability." *Id.* § 1B1.3 cmt. n. 1. The focus is on acts for which a defendant should be held accountable rather than criminally liable. *Id.*

Testimony during trial revealed that Prakash saw Popov's name next to his own name on the clinic sign. Although Prakash argues that employees told him that Popov no longer worked for the clinic, evidence suggests that Prakash knew that Popov had at one time held a role in the conspiracy similar to his own.

Furthermore, during trial and at sentencing, the government presented patient charts containing both Popov's printed name and Prakash's signature. When viewed in conjunction with the evidence that Popov and Prakash were the only two named physicians on the clinic's sign, these documents were sufficient to support the district court's finding that Popov's bills to Medicare were foreseeable to Prakash. Even though we might have decided the issue differently, we cannot conclude with a "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Prakash therefore, fails to demonstrate that the court's finding was clearly erroneous.

**VACATED AND REMANDED for resentencing.**