**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10303 |
| Plaintiff - Appellee, | D.C. No. 4:12-cr-00054-JSW-2 |
| v. | |
| ADEBOLA ADEFUNKE ADEBIMPE, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10324 |
| Plaintiff - Appellee, | D.C. No. 4:12-cr-00054-JSW-1 |
| v. | |
| PATRICK ADEBOWALE SOGBEIN, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10325 |
| Plaintiff - Appellee, | D.C. No. 4:12-cr-00054-JSW-4 |
| v. | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

EDUARDO ABAD,

            Defendant - Appellant.

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted October 20, 2015
San Francisco, California

Before: PAEZ, MURGUIA, and HURWITZ, Circuit Judges.

Adebola Adebimpe, Patrick Sogbein, and Eduardo Abad appeal their convictions and sentences for health care fraud, conspiracy to commit health care fraud, and conspiracy to pay and receive kickbacks from a federal health program. We affirm the convictions and sentences.

1. The district court's jury instructions on "Statements by Defendants" and "Health Care Fraud" did not "naturally and necessarily" call attention to Sogbein's decision not to testify at trial. *United States v. Tam*, 240 F.3d 797, 805 (9th Cir. 2001) (citation omitted). These instructions only referred to out-of-court statements made by Sogbein; they did not refer to his decision not to testify. Moreover, the district court specifically instructed the jury not to consider Sogbein's failure to testify. *See United States v. Padilla*, 639 F.3d 892, 897 (9th Cir. 2011) (stating that instruction that jury was prohibited from considering

2

defendant's failure to testify was "sufficient to put the jury on notice of its obligation to draw no adverse inference").

2.  The district court did not abuse its discretion in applying a four-level sentencing enhancement for Sogbein's leadership role in the conspiracy.  The Guidelines permit such an enhancement if the conspiracy involved five or more people and the defendant exercised authority over other participants in the conspiracy.  U.S. Sentencing Guidelines Manual § 3B1.1(a) (U.S. Sentencing Comm'n 2014); *United States v. Rivera*, 527 F.3d 891, 908 (9th Cir. 2008).  Sogbein does not dispute that there were five or more people in the conspiracy.  There was sufficient evidence for the district court's determination that Sogbein exercised authority over his co-conspirators.  Sogbein directed Dr. Calaustro, the recruiters Abad and Mele Saavedra, and Valerie Fernandez, an office worker, on how to carry out their roles in the conspiracy; he also owned or operated the medical supply companies.  *See Rivera*, 527 F.3d at 909–10 (holding that a leadership enhancement properly applied to defendant who "exercised decision making authority in the procurement and distribution of narcotics" and "directed" others in the conspiracy).

3.  The district court did not err in determining the amount of the defendants' intended loss.  "The court need only make a reasonable estimate of the loss."  U.S.

Sentencing Guidelines Manual § 2B1.1 cmt. n.3(C). The total amount of claims submitted to Medicare is prima facie evidence of the intended loss amount. *United States v. Popov*, 742 F.3d 911, 916 (9th Cir. 2014). A defendant's intended loss amount is a factual determination reviewed for clear error. *Id.* at 914. Although Sogbein and Adebimpe presented some evidence at trial that Medicare commonly pays between 50–80% of the total amount of submitted claims, other evidence showed that the defendants were able to recover much of the remaining amount from Medi-Cal and private insurers. The district court's finding that Sogbein and Adebimpe intended to cause losses in the full amount that they billed Medicare was not clearly erroneous. *See United States v. Santos*, 527 F.3d 1003, 1009 (9th Cir. 2008) (holding that district court did not clearly err in rejecting defendants' testimony and finding defendants intended to take the full value of the counterfeit checks they produced).

In calculating the amount of the intended loss, the district court was not required to discount the value of any wheelchairs that happened to be medically necessary, because the medical examinations mandated to determine medical necessity were not performed.

Adebimpe also argues that her intended loss amount should not include losses caused by Sogbein. However, in a conspiracy, an individual defendant's

4

intended loss is the amount of loss caused by the conspiracy that was reasonably foreseeable to the defendant. *United States v. Treadwell*, 593 F.3d 990, 1003 (9th Cir. 2010). Whether losses were reasonably foreseeable to a defendant is a factual determination reviewed for clear error. *Popov*, 742 F.3d at 917. The district court did not clearly err in determining that all losses intended by Sogbein were foreseeable to Adebimpe once she joined the conspiracy. Adebimpe and Sogbein were married for 20 years, they relied on the same doctor to write the fraudulent prescriptions, and Sogbein sent many patient referrals to Adebimpe's company and was significantly involved in its operations.

4. For a fraud offense, the district court is required to order restitution in the amount of the victim's actual loss. 18 U.S.C. §§ 3663A(c)(1)(A)(ii), 3664(f)(1)(A). In a conspiracy, restitution may be ordered against each defendant to the extent the victim's losses were reasonably foreseeable to that defendant. *United States v. Riley*, 335 F.3d 919, 932 (9th Cir. 2003). Here, as with the intended loss amount discussed above, the Medicare losses caused by Sogbein were reasonably foreseeable to Adebimpe, because the two were married for 20 years, they both relied on Dr. Calaustro to write the fraudulent prescriptions, Sogbein sent many patients to Dignity, and he was significantly involved in Dignity's operations. The district court did not abuse its discretion by ordering

5

restitution in the amount that Medicare actually paid that was reasonably foreseeable to each defendant. *See id.*

5. It is improper to consider a defendant's nationality as a sentencing factor. U.S. Sentencing Guidelines Manual § 5H1.10; *United States v. Borrero-Isaza*, 887 F.2d 1349, 1352 (9th Cir. 1989). Here, the district court did not improperly consider Sogbein's status as an immigrant, but instead, while crediting Sogbein for overcoming initial hurdles when he moved to the United States, found that Sogbein had committed significant fraudulent activity that warranted a high sentence.

6. The district court did not abuse its discretion in excluding Adebimpe's medical records under Federal Rule of Evidence 403. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005). Rule 403 allows the court to exclude evidence if "its probative value is substantially outweighed by" a risk of unfair prejudice. The probative value of the records was minimal, and Adebimpe was able to present her defense—that she was too distracted to participate in the conspiracy—through other means.

Nor did exclusion of the records violate Adebimpe's constitutional right to present a complete defense. Although the right to present a complete defense may be violated if evidence is excluded "under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote,

6

well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). Adebimpe's medical records were properly excluded under Rule 403 because they were highly prejudicial and only minimally probative, and this exclusion did not violate Adebimpe's right to present her defense. *See United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992) (exclusion of testimony did not violate defendant's right to present a defense where circumstances of the testimony were confusing and testimony "would not have added substantially to the knowledge the jury gained during the course of the trial").

7. The district court did not err by denying Adebimpe's motion for acquittal or a new trial based on the sufficiency of the evidence. We view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could find Adebimpe guilty beyond a reasonable doubt. *United States v. Stanton*, 501 F.3d 1093, 1099 (9th Cir. 2007). Under this standard, there was sufficient evidence to convict Adebimpe of conspiracy and fraud, because she concealed Sogbein's involvement at Dignity, certified her company's claims to Medicare, and billed Medicare more than $1.5 million, 93% of which came from prescriptions where the required medical examinations were not performed. *See*

*United States v. Berry*, 683 F.3d 1015, 1024 (9th Cir. 2012) (holding evidence was sufficient to convict defendant of Social Security fraud where defendant knew of his obligation to use benefits for his son, but did not do so and also did not account for the benefits he received).

8.  A minor or minimal role reduction may be applied under Guidelines section 3B1.2 where the defendant is "less culpable" than others in the conspiracy or "lack[s] knowledge or understanding of the scope and structure of the enterprise." U.S. Sentencing Guidelines Manual § 3B1.2 cmt. nn.4–5. The district court's factual determination of a defendant's relative culpability is reviewed for clear error. *United States v. Green*, 152 F.3d 1202, 1205 (9th Cir. 1998). Here, the district court's determination that Adebimpe was not less culpable than others in the conspiracy was not clearly erroneous. Adebimpe did not show that she was less culpable than any participant in the conspiracy other than Sogbein, who received a leadership enhancement. Adebimpe incorporated the medical supply company Dignity, enrolled Dignity in Medicare's reimbursement system, certified the validity of the claims Dignity submitted, and allowed her company to submit fraudulent claims to Medicare totaling more than $1.5 million. *See United States v. Peters*, 962 F.2d 1410, 1414–15 (9th Cir. 1992) (holding co-defendant wife was not entitled to a minor or minimal role reduction where evidence showed that she

was aware of and assisted her husband in his mail fraud scheme and received economic benefits from it).

9. "A substantively reasonable sentence is one that is sufficient, but not greater than necessary to accomplish § 3553(a)(2)'s sentencing goals." *United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (en banc) (citation omitted). Adebimpe's sentence of 51 months, at the low end of her Guidelines range, was not substantively unreasonable in light of the fact that she was responsible for fraudulent claims to Medicare totaling $1.5 million. *See United States v. Dibe*, 776 F.3d 665, 672 (9th Cir. 2015) (holding sentence of 120 months for wire fraud not substantively unreasonable where defendant was responsible for losses greater than $1 million).

10. The government did not commit misconduct by arguing at the close of trial that Abad minimized his role during his FBI interviews. It is misconduct for the government to make arguments to the jury that the government knows to be false or has strong reason to doubt. *United States v. Reyes (Reyes I)*, 577 F.3d 1069, 1077 (9th Cir. 2009). Despite being asked about his interactions with Sogbein, and being asked generally if there was anything else he should tell the FBI, Abad did not tell the FBI during his first interview that Sogbein paid him $100 for each person he recruited. Abad also admitted to the FBI that he lied about

9

not speaking to Sogbein before Abad's first interview. There is insufficient evidence to conclude that the government made arguments that were false or unfounded. *Compare Reyes I*, 577 F.3d at 1076–78 (holding prosecutor committed misconduct by asserting to jury that no employees knew that a stock option backdating scheme was occurring, when the prosecutor knew that some employees were aware of the scheme), *with United States v. Reyes (Reyes II)*, 660 F.3d 454, 462–63 (9th Cir. 2011) (holding no misconduct where prosecutor's argument that the defendant intended to profit from a stock option backdating scheme was fairly supported by evidence of the number of stock options the defendant received and the fact that he signed multiple stock option grants).

11. The government did not commit misconduct by referring to Dr. Calaustro's and Mele Saavedra's plea agreement obligations to testify truthfully. Abad's co-defendant Sogbein attacked the witnesses' credibility in his opening statement based on the witnesses' agreements with the government. The government's references to the plea agreements were therefore proper rehabilitation, not improper vouching. *See United States v. Dorsey*, 677 F.3d 944, 953–54 (9th Cir. 2012) (holding prosecution's statement that "the United States will not tolerate any deception" from cooperating witness was not improper

10

vouching where statement came after defense counsel attacked witness's credibility for striking a deal with the government).

12. The district court did not abuse its discretion by admitting the government's summary cell phone chart. Federal Rule of Evidence 1006 requires the proponent of a summary exhibit to turn over the underlying materials that support the exhibit. *Amarel v. Connell*, 102 F.3d 1494, 1516 (9th Cir. 1996). The government turned over the underlying cell phone records to Abad well in advance of trial.

Nor was it an abuse of discretion for the district court to exclude Abad's separate summary chart, which included call durations that the government's chart did not. Abad failed to disclose his foundation witness by the district court's deadline. Moreover, Abad's chart was largely cumulative of other evidence, including the government's chart and Abad's cross-examination of FBI agent Elizabeth Hadley, during which Abad asked questions about call durations. *See United States v. Smith*, 196 F.3d 1034, 1038 (9th Cir. 1999) (holding no abuse of discretion in excluding extrinsic evidence that impeached government witness, where evidence was cumulative of the witness's own admissions).

13. The district court did not err by denying Abad's motion for acquittal or a new trial based on the sufficiency of the evidence. Again, the court must view

11

the evidence in the light most favorable to the prosecution. *Stanton*, 501 F.3d at 1099. During Abad's FBI interviews, he minimized how much he was paid and the extent of his communications with Sogbein, which included hundreds of cell phone contacts. Abad also accompanied Dr. Calaustro on some of her home visits, so the jury could infer that he had an opportunity to witness how perfunctory her examinations were. And Abad bragged about how much money he was making by recruiting people. There was sufficient evidence to convict Abad of conspiracy and health care fraud. *See United States v. Grasso*, 724 F.3d 1077, 1087 (9th Cir. 2013).

14. Abad's conduct falls within the scope of the anti-kickback statute, which prohibits willfully receiving money "in return for referring an individual to a person" for a benefit under a federal health program. 42 U.S.C. § 1320a-7b(b)(1)(A). Abad approached people he thought were Medicare-eligible, collected their personal contact information, and sent the information to Dr. Calaustro and Sogbein in return for $100 payments. Abad was not merely advertising for Sogbein and Dr. Calaustro, and his conduct was covered by the statute. *See United States v. Duz-Mor Diagnostic Lab., Inc.*, 650 F.2d 223, 227 (9th Cir. 1981) (holding laboratory owner's offer to pay nursing home a 15%

rebate for Medicare referrals was an illegal offer to pay a Medicare kickback, not a legitimate preliminary negotiation).

**AFFIRMED.**