**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1322
_____

UNITED STATES OF AMERICA

v.

ERIC C. OPITZ,
A/K/A GURU

ERIC C. OPITZ,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:14-cr-00541)
District Judge: Hon. Lawrence F. Stengel
_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 11, 2017
_____

Before: GREENAWAY, JR., SHWARTZ, and RENDELL, <u>Circuit Judges</u>.

(Filed: August 8, 2017)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Eric Opitz appeals two aspects of his sentence: the loss calculation under the United States Sentencing Guidelines and the restitution order. Because the District Court's loss calculation was supported by the evidence and the Court did not commit plain error in imposing restitution for the losses that resulted from Opitz's crimes, we will affirm.

I

Opitz suffers from human growth hormone deficiency and received a prescription for Genotropin, a human growth hormone supplement. Medicare paid for Opitz's Genotropin at a cost of approximately $461 per kit. From July 2012 through June 2014, Opitz sold the Genotropin for approximately $425 per kit, using postings on Craigslist. Undercover agents contacted Opitz through a Craigslist advertisement and purchased Genotropin from him. In addition, law enforcement identified more than twenty people who purchased the drug from Opitz.

A grand jury returned a twenty-count indictment charging Opitz with health care fraud, in violation of 18 U.S.C. § 1347 (Counts 1-10); mail fraud, in violation of 18 U.S.C. § 1341 (Counts 11-13); distribution of human growth hormone, in violation of 21 U.S.C. § 333(e) (Counts 14-17); and distribution of controlled substances in violation of 21 U.S.C. § 841 (Counts 18-20). Opitz pled guilty to all of the charges in the indictment without a plea agreement.

At the sentencing hearing, the District Court considered evidence of the loss sustained as a result of Optiz's health care fraud. **App. 17.** The Government argued that a loss figure totaling $171,353 was appropriate because it was at least, if not less than, the amount Medicare paid for the Genotropin Opitz admitted he fraudulently obtained, as reflected by his plea to Counts One through Ten of the indictment. The Government asserted that this was a reasonable figure because Opitz had not revealed to Medicare his intention to sell some of the drugs and thus he had received all of the drugs from Medicare under a false pretense. The Government also presented evidence from Opitz's bank account showing cash deposits totaling $97,760, which, it said, included approximately $33,000 in wire transfers from his customers,[1] records from the Sands Casino in Bethlehem indicating Opitz made over $400,000 in buy-ins, handwritten notes taken from Opitz's residence showing the contact information for Genotropin customers and calculations for past sales,[2] and his posting on Craigslist of over 1,800 advertisements offering to sell Genotropin.[3] Opitz argued that while he was guilty of selling Genotropin, he used most of the drugs himself and should be responsible only for the value of the drugs that the Government proved he resold, which totaled $46,514.

In addressing the loss calculation under the Guidelines, the District Court found that the evidence supported the Government's proposed intended loss calculation of approximately $171,000. Applying the grouping rules, Opitz faced a Guidelines range of

---

[1] There may be a mathematical error in the Government's figure as it appears that the money sent via wire transfer totals only $29,064.00.

[2] The Government did not explain the meaning of these calculations.

[3] During the relevant period, Opitz's only income was $950 per month in social security benefits.

fifteen to twenty-one months. The Court imposed a sentence of eighteen months'

imprisonment followed by three years of supervised release, and ordered Opitz to pay a

special assessment of $2,000 and restitution of $171,353 to Medicare. Although Opitz

objected to the Guideline loss calculation, he did not object to the restitution order. Opitz

appeals.

## II[4]

Opitz now challenges both the District Court's loss calculation and restitution

order. We will address each in turn.

## A[5]

The burden of proving the loss amount at sentencing rests with the Government.

United States v. Evans, 155 F.3d 245, 253 (3d Cir. 1998); United States v. McDowell,

888 F.2d 285, 291 (3d Cir. 1989). "[O]nce the Government makes out a prima facie case

of the loss amount, the burden of production shifts to the defendant to provide evidence

that the Government's evidence is incomplete or inaccurate." United States v. Jimenez,

513 F.3d 62, 86 (3d Cir. 2008).

Opitz was convicted of, among other things, violations of 18 U.S.C. § 1347, which

is a "federal health care fraud offense." 18 U.S.C. § 24(a)(1); U.S. Sentencing Guidelines

Manual § 2B1.1 cmt. n.1 (U.S. Sentencing Comm'n 2016) ("USSG"). The applicable

Guideline for this offense is set forth in U.S.S.G. § 2B1.1 and, because the offense

---

[4] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[5] While we review the District Court's factual findings for clear error, our review of its "interpretation of the Sentencing Guidelines, including what constitutes 'loss,' is plenary." United States v. Napier, 273 F.3d 276, 278 (3d Cir. 2001).

involved a government health care program, it is subject to a special rule for calculating

the loss amount.  See, e.g., id. at § 2B1.1 cmt. n.3(F)(viii); United States v. Popov, 742

F.3d 911, 916 (9th Cir. 2014).[6]  That rule provides that

> [i]n a case in which the defendant is convicted of a Federal health care
> offense involving a Government health care program, the aggregate dollar
> amount of fraudulent bills submitted to the Government health care
> program shall constitute prima facie evidence of the amount of the intended
> loss, i.e., is evidence sufficient to establish the amount of the intended loss,
> if not rebutted.

U.S.S.G. § 2B1.1 cmt. n.3(F)(viii).  Under this special rule, therefore, the amount billed

to Medicare is prima facie evidence of intended loss and, if not rebutted is sufficient to

establish the loss amount by a preponderance of the evidence.[7]  Popov, 742 F.3d at 916.

Opitz pled guilty to submitting fraudulent claims totaling $171,353 to Medicare.

As a result of this plea, the Government has presented prima facie evidence that the

intended loss amount was $171,353.  Although Opitz argued that the loss amount should

be reduced because he used some of the Genotropin himself, he only presented evidence

that he had a condition for which human growth hormone was prescribed.  While the

District Court accepted Opitz's assertion that he took a certain amount of human growth

hormone during the relevant period, despite his statements to an undercover agent that his

---

[6] Opitz makes no reference to this special rule and instead relies upon the special rule concerning government benefits set forth in Application Note 3(F)(ii) ("Government Benefits Rule").  Application Note 3(F)(viii), which was part of the 2011 amendment to the Guidelines, instructs district courts that "in health care fraud cases involving a Government health care program," the special rule set forth in Application Note 3(F)(viii) applies.  Popov, 742 F.3d at 916.  Thus, Opitz's reliance on the Government Benefits Rule is misplaced.

[7] The amount of loss from the offense and the loss amount for Guideline purposes is the greater of actual loss or intended loss.  U.S.S.G. § 2B1.1 cmt. n.3(A).

doctor took him off the prescription, he provided no evidence from which that amount could be calculated. Thus, Opitz did not rebut the loss amount. Accordingly, Opitz's assertion that the District Court incorrectly calculated the loss amount is without merit.

B

Opitz also claims that the District Court erroneously based its restitution order on intended loss, rather than actual loss. Because Opitz failed to object to the restitution order at sentencing, we review it for plain error. United States v. Couch, 291 F.3d 251, 252-53 (3d Cir. 2002).[8]

A District Court's restitution order cannot exceed the actual loss caused by a defendant's crime. 18 U.S.C. §§ 3663, 3664; United States v. Feldman, 338 F.3d 212, 219 (3d Cir. 2003) ("[T]he amount of restitution awarded is limited to the amount of actual loss caused by the defendant's crime."). Here, the District Court ordered Opitz to pay $171,353 in restitution but did not expressly state that this figure represented Medicare's actual loss for restitution purposes. Because the record supports the conclusion that Opitz caused actual losses of at least $171,153, the failure to make this statement does not require remand. First, although Opitz disputed that the dollar amounts in the indictment accurately reflected the amount of Genotropin he sold, the evidence presented at the sentencing hearing provided a basis for the restitution amount the District Court ordered. The Government presented evidence showing Opitz earned at least

---

[8] Under the plain error standard, we will affirm the sentence unless Opitz demonstrates: (1) an error; (2) that is clear or obvious; and (3) affects substantial rights. Puckett v. United States, 556 U.S. 129, 135 (2009). If all three prongs are satisfied, then the Court has the discretion to remedy the error only if the error "seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings." Id.

$46,514 from his sale of Genotropin during the relevant period. Other evidence provides a basis to infer he actually sold a greater amount. For example, he made large cash deposits beyond the money law enforcement traced to specific buyers totaling $64,670 at a time his monthly income was $950 in social security disability payments. At the same time, he had the means to engage in significant gambling, posted over a thousand advertisements offering to sell Genotropin on Craigslist, told an undercover agent that he was no longer taking Genotropin himself, and had more than $4,000 worth of unopened Genotropin kits in his home when his home was searched. While this evidence does not precisely equate to $171, 353, it supports using $171,353 as at least a reasonable estimate. See United States v. Atl. States Cast Iron Pipe Co., 612 F. Supp. 2d 453, 486 (D.N.J. 2009). Thus, there is sufficient evidence to conclude that $171,353 was the actual loss Medicare sustained as a result of Opitz's fraudulent conduct.[9]

Second, the District Court's statements at sentencing indicate that its restitution order reflects its calculation of actual loss. In its discussion of loss under the Guidelines, the District Court distinguished actual loss from intended loss and defined intended loss as "the pecuniary harm the defendant purposely sought to inflict."[10] App. 79. It made no

---

[9] While Opitz argues that ordering him to pay restitution for the full amount of Medicare paid "fails to credit [him] for the HGH" he used during the time period, Appellant's Br. 20, he presented no evidence that the District Court could use to offset the loss amount the Government established, United States v. Bryant, 655 F.3d 232, 254 (3d Cir. 2011) (holding that it is the defendant's burden to prove offsets that lessen a restitution award).

[10] Under the Guidelines, actual loss is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense," U.S.S.G. § 2B1.1 cmt. n.3(A)(i), and intended loss is defined as "the pecuniary harm that the defendant purposely sought to

such distinction in its later findings and in fact focused on Opitz's actual conduct. In its discussion of the § 3553 factors, the District Court observed that while Opitz had a medically established need for Genotropin, he appeared to be taking "much less than prescribed," had stated that his "doctor had taken him off human growth hormone" entirely, App. 106, and "he had extra kits to sell", App. 106. The District Court also described Opitz as engaging in "sustained fraudulent conduct" and that by "getting these medications paid for by Medicare . . . , [h]e was defrauding the federal government by obtaining [the] medication[] and selling [it] to other users." App. 107. These observations, together with the District Court's conclusion that the record provided "more than an adequate factual basis" to support the health care fraud and other charges, App. 107, leave us confident that the District Court did not inadvertently conflate actual and intended loss. Therefore, any error from failing to state explicitly that the restitution figure reflected actual loss, rather than intended loss, did not affect Opitz's substantial rights.

III

For the foregoing reasons, we will affirm.

---

inflict" including "intended pecuniary harm that would have been impossible or unlikely to occur," id. at § 2B1.1 cmt. n.3(A)(ii).