**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>L'TANYA DENISE SMITH, AKA<br>L'Tanya Russell, AKA L'Tanya Smith,<br><br>Defendant-Appellant.</td><td>No.  16-50322<br><br>D.C. No.<br>2:13-cr-00719-PSG-5<br><br>MEMORANDUM*</td></tr>
</table>

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted October 5, 2017
Pasadena, California

Before: RAWLINSON and N.R. SMITH, Circuit Judges, and KORMAN,**
District Judge.

Defendant-Appellant L'Tanya Smith (Smith), convicted of five counts of

health care fraud in violation of 18 U.S.C. § 1347, appeals her sentence of fifty-

---

\*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*        The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

seven months' imprisonment and restitution obligation of $4,007,586. Smith asserts that the district court erred when determining the loss amount used to calculate her sentencing range and restitution obligation. Because Smith did not raise an objection to the loss calculation or restitution before the district court, we review the claims on appeal for plain error. *See United States v. Calvillo-Palacios*, 860 F.3d 1285, 1288 n.3 (9th Cir. 2017).

The amount of loss may be calculated by the greater of either actual or intended pecuniary harm. *See* U.S.S.G. § 2B1.1(b)(1) cmt. n.3(A). "A district court need not make its loss calculation with absolute precision; rather, it need only make a reasonable estimate of the loss based on the available information. . . ." *United States v. Walter-Eze*, 869 F.3d 891, 912 (9th Cir. 2017) (citations and internal quotation marks omitted). Specifically, "[i]n health care fraud cases, the amount billed to an insurer shall constitute prima facie evidence of intended loss for sentencing purposes." *Id.* (citation omitted).

Smith pled guilty without the benefit of a plea agreement. At the change of plea hearing, Smith affirmed that, as a physician's assistant at the Sunset Clinic in Los Angeles, California, she participated in a scheme to defraud Medicare by ordering and prescribing medically unnecessary items and services for patients at

the Sunset Clinic, as well as by making medically unnecessary referrals to other Medicare providers.

Smith's intended loss to Medicare was calculated to be $12,212,594. This calculation included the amount billed Medicare from Sunset Clinic based on Smith's orders added to the amount billed Medicare as a result of Smith's referrals to other providers. The actual loss to Medicare as a result of Smith's actions was calculated at $4,007,586. The district court adopted these calculations, and Smith did not object.

Although Smith had the burden at sentencing to rebut the presumption of intended loss based on the amounts billed to Medicare, she did not present evidence to challenge this evidence. *See Walter-Eze*, 869 F.3d at 912. On appeal, Smith urges us to consider the declaration of co-defendant Sarkissian as record evidence rebutting the amount of Smith's intended loss. Sarkissian's declaration was not before the district court at the time of Smith's sentencing and, in any event, referred only to Sarkissian's individual understanding and intent to bill Medicare; it did not similarly address Smith's understanding and intent. Smith presented no similar declaration at her own sentencing.

Smith also challenges the district court's determination that the entirety of the Medicare billing amounts were fraudulent. However, Smith failed to

establish—or even raise the argument for consideration—that any portion of the loss amount "was legitimate and untainted by the fraud." *Walter-Eze*, 869 F.3d at 913.

Given that the loss estimate was reasonably based upon evidence available at Smith's sentencing, we cannot conclude that the district court plainly erred when calculating the intended loss amount attributable to Smith. *See id.* ("Nor, we should add, do counsel's arguments, unsupported by any evidence at trial or sentencing, that [the defendant] was familiar with Medicare's reimbursement practices or that she did not expect to recoup the full billed amount suffice to rebut this presumption. . . ."). Accordingly, Smith's related claim that the district court plainly erred in calculating the restitution amount also fails. *See id.* at 914-15.

**AFFIRMED.**

*United States v. Smith*, No. 16-50322

**Korman, District Judge, concurring:**

As the memorandum disposition explains, Smith's appeal fails because she did not in the district court challenge the amount of intended loss. I write separately because this forfeiture raises a serious question of ineffective assistance of counsel.

On appeal, Smith argues that the district court improperly attributed to her an intent to defraud Medicare of amounts billed to it rather than the far smaller amounts it actually paid. If there is a reason competent counsel would not have raised this argument below, it does not now occur to me. This issue was crucial—the difference between $4 million or $12 million in fraud and two Guidelines levels. And this argument, which Smith now must make under plain-error review, could have been raised because this Court presented it in *United States v. Popov*, 742 F.3d 911 (9th Cir. 2014), which predated Smith's arrest. Addressing this same issue, *Popov* explained that "it is well known that Medicare routinely pays much less than the billed amount." *Id.* at 915. Because of this, the amount billed is deemed the intended loss only *prima facie*; a defendant can introduce evidence that the amount billed overstated her intent, including evidence "that the defendant was intimately familiar with Medicare's fixed rate billing practices." *Id.* at 916. That Smith's counsel apparently made no such argument is troubling, particularly when one of the exhibits in Smith's co-defendant's trial was a manual "to tell a physician or a physician's

assistant how to use the [Medicare] fee schedule." Indeed, an expert at the trial agreed that providers "were obligated under Medicare rules and procedures to bill at their usual and customary rates" and that "it is a violation of the rules and procedures to bill Medicare according to the rates [a practitioner knows she] will be reimbursed."

Smith's intent is also murky in another way. The great majority of the billing—about $11 million of the $12 million, worth four Guidelines levels—was done not by Smith, but by providers to whom Smith referred patients. Yet the entire amount of this billing was attributed to Smith as "intended loss," "pecuniary harm that was *intended* to result from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(ii) (2010) (emphasis added). "'[I]ntended loss' means a loss the defendant *purposely* sought to inflict. 'Intended loss' does not mean a loss that the defendant merely *knew* would result from [her] scheme or a loss [she] might have *possibly and potentially* contemplated." *United States v. Manatau*, 647 F.3d 1048, 1050 (10th Cir. 2011) (Gorsuch, J.). Smith no doubt knew that these referral providers would bill some amounts to Medicare, but it is not at all clear that she intended them—procedure by procedure—to bill the $10,980,265 that they did. (And, of course, Medicare actually paid the referral providers far less, about $3.5 million.)

Combined, these two arguments reduce $12 million of intended fraud (the amount billed by Smith and the referral providers) to $450 thousand (the amount

Medicare paid on bills from Smith alone). That is six levels' difference, a Guidelines range of 30–37 months rather than 57–71. To be sure, my concerns do not alter the memorandum disposition's correct conclusion, that Smith is not entitled to relief on direct appeal. She may, however, be entitled to relief on collateral review. *See* 28 U.S.C. § 2255.