**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 9 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-50386 |
| Plaintiff-Appellee, | D.C. No. 2:16-cr-00215-PA-1 |
| v. | |
| MICHAEL MIRANDO, AKA Michael John Mirando, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted February 8, 2019
Pasadena, California

Before: GOULD and NGUYEN, Circuit Judges, and MARBLEY,[**] District Judge.

Defendant-Appellant Michael Mirando was convicted in 2017 of fifteen counts of health care fraud in violation of 18 U.S.C. §1347. At trial, through an FBI Special Agent, the government presented evidence to indicate that Mirando

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

1

had billed $8.4 million fraudulently. In total, the insurance companies paid approximately $3 million on these fraudulent claims. The Probation Office recommended a 97-month sentence, which the district court imposed. This appeal timely followed.

1.      We review *de novo* a district court's construction and interpretation of the Sentencing Guidelines, and we review for abuse of discretion a district court's application of the Guidelines to the facts. *United States v. Popov*, 742 F.3d 911, 914 (9th Cir. 2014) (citing *United States v. Gomez-Leon*, 545 F.3d 777, 782 (9th Cir. 2008)). A district court's determination of the loss amount, like other factual determinations, is reviewed for clear error. *United States v. Tulaner*, 512 F.3d 576, 578 (9th Cir. 2008).

As part of its calculation of Mirando's sentence in accordance with the Sentencing Guidelines, the district court made a finding of the intended "loss amount" from the fraud. Mirando argues that this was calculated incorrectly. We agree.

In cases of health care fraud, courts must determine the loss amount, which is "a specific offense characteristic that increases the defendant's offense level pursuant to the Guidelines." *Popov*, 742 F.3d at 914. To calculate the loss amount, *Popov* established that the "amount billed to the insurer" is "prima facie evidence of an intended loss for sentencing purposes," but this a rebuttable presumption. *Id.*

2

at 916. Parties may introduce additional evidence to support arguments that the amount billed overestimates or understates the defendant's intent. *Id.*

We have held that where sentencing enhancements are based on uncharged conduct and "ha[ve] an extremely disproportionate effect on the sentence relative to the offense of conviction," "due process may require clear and convincing evidence of that conduct." *United States v. Hymas*, 780 F.3d 1285, 1289 (9th Cir. 2015) (internal quotation marks omitted). That is the case here: the intended loss enhancements increased Guidelines offense level from six to thirty.

The district court abused its discretion when it concluded that the government's evidence met this "clear and convincing" standard. The government offered the prima facie evidence, but at sentencing Mirando, per *Popov*, tried to rebut the presumption. He testified that he knew he would never receive a full reimbursement of the amount billed.

First, although the district court characterized Mirando's testimony as inconsistent with the jury's conclusions, the jury made a conclusion about the amount billed, not about Mirando's intended loss. The latter question is a question for the court. Second, though the district court characterized Mirando's testimony as inconsistent with defenses presented at trial, Mirando did not testify at trial, and defense counsel presented no affirmative case and put on no witnesses.

3

Third, Mirando's admission that he would have kept the money if Medicare reimbursed him for more than what he expected – a fact on which the dissent relies – does not demonstrate that Mirando's intended loss was the full amount that he billed. Neither the district court below, nor the government on appeal, nor the dissent has explained why Mirando is not credible when he testifies as to reimbursement rates but is credible when, shortly thereafter, he says he would have kept any overpayment offered.

The dissent ignores that the government here had a burden of proving the loss amount by clear and convincing evidence, as explained herein. The prosecution did not show by clear and convincing evidence that Mirando intended a loss in the full amounts billed, and indeed his uncontradicted testimony was to the contrary.

Thus, the district court erred when it concluded that by clear and convincing evidence the amount Mirando billed represented his intended loss.

2.   Mirando also argues that his sentence was impermissibly enhanced because the district court found that Mirando perpetrated his fraud through "sophisticated means." We review applications of the Sentencing Guidelines to the facts for abuse of discretion. *United States v. Gomez-Leon*, 545 F.3d 777, 782 (9th Cir. 2008). We conclude that the district court did not abuse its discretion by applying the sophisticated means enhancement.

4

The Sentencing Guidelines provide for a two-level enhancement where "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). To qualify as "sophisticated," the offense must be "especially complex or especially intricate . . . conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1 cmt. n.9(B). The Commentary also notes that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." *Id.*

It would be reasonable to conclude that creating MMS as a fictitious entity and sending some of the funds from the fraud to an MMS bank account in Mirando's name constitutes sophisticated means because it adds a layer of fraud and apparent deception to the enterprise. *See generally*, *United States v. Horob*, 735 F.3d 866 (9th Cir. 2013). But it would also be reasonable to conclude that MMS did not add to the sophistication of Mirando's scheme, either because it was beyond the scope of the scheme or because an account in Mirando's name was not an especially sophisticated maneuver. Because either of these conclusions would be reasonable, it was not an abuse of discretion for the district court to apply the two-level enhancement for use of sophisticated means, and we **AFFIRM** application of that enhancement.

5

3.      Mirando argues that trial counsel was impermissibly restricted from cross-examining Stanton Crowley, Mirando's former business partner and the government's cooperating witness. A district court's ruling limiting the scope of cross-examination is reviewed for abuse of discretion. *United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir. 2007).

The district court has "wide latitude . . . to impose reasonable limits on cross-examination." *Id*. But a defendant "has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010) (citation omitted). The touchstone is that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Id*. (internal quotations omitted).

It was not an abuse of discretion for the district court to limit cross-examination in this way. Mirando was permitted to impeach Crowley sufficiently to mount a "meaningful defense." Through cross-examination, Mirando elicited sufficient testimony to alert the jury to Crowley's cooperation with law enforcement and to prior issues with his tax filings. Mirando also challenged Crowley's credibility on other grounds, including his falling out with Mirando, prior allegations of trade secrets theft, and the absence of any charges against him.

Because Mirando had the opportunity to mount a meaningful defense and because the district court excluded discrete questions and not entire scopes of

inquiry, it was not an abuse of discretion for the court to limit the cross-examination in the way it did.

4.       Mirando argues that the "intent to defraud" jury instruction, *see* Ninth Circuit Model Instruction 8.121, should have been written in the disjunctive ("or") rather than the conjunctive ("and"). Where there has been no objection to a jury instruction at trial, we review for plain error. Fed. R. Crim. P. 52(b); *United States v. Conti*, 804 F.3d 977, 981 (9th Cir. 2015).

Any error here was not plain.  In *United States v. Shaw*, we recently upheld a conviction under 18 U.S.C. § 1344, which includes substantially the same language as § 1347, under which Mirando was convicted. 885 F.3d 1217, 1218-19 (9th Cir. 2019). The defendant in *Shaw* also received a jury instruction phrased in the disjunctive, and the panel concluded this was harmless error. *Id.*

Any error here did not affect Mirando's substantial rights or affect the fairness of the proceeding. There was ample evidence at trial to sustain Mirando's conviction, and no indication that the jury verdict would have been different if "or" were swapped for "and" in the instruction in question.

Mirando's conviction is **AFFIRMED**.  Mirando's sentence is **VACATED AND REMANDED** for resentencing consistent with this disposition.

*United States v. Mirando*, 17-50386

NGUYEN, Circuit Judge, dissenting:

The majority ignores both the standard of review and the governing law. "Clear error review is significantly deferential . . . ." *United States v. Popov*, 742 F.3d 911, 914 (9th Cir. 2014) (quoting *Leavitt v. Arave*, 646 F.3d 605, 608 (9th Cir. 2011)). "Where testimony is taken, we give special deference to the district court's credibility determinations," *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008), because "the various cues that 'bear so heavily on the listener's understanding of and belief in what is said' are lost on an appellate court later sifting through a paper record." *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)); *see also United States v. Lang*, 149 F.3d 1044, 1046 (9th Cir. 1998) (recognizing the district court's "superior position 'to . . . make credibility determinations in cases in which live testimony is presented'" (quoting *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir. 1984) (en banc))).

The majority errs at the outset by misstating the burden of proof. "In health care fraud cases, the amount billed to an insurer shall constitute prima facie evidence of intended loss for sentencing purposes. *If not rebutted, this evidence shall constitute sufficient evidence to establish the intended loss . . . .*" *Popov*, 742

1

F.3d at 916 (emphasis added).[1]  The majority acknowledges that "[t]he government offered the prima facie evidence" of intended loss and that "Mirando, per *Popov*, tried to rebut the presumption," Maj. Op. at 3, but incongruously states that "the government here had a burden of proving the loss amount."  Maj. Op. at 4.  To the contrary, it was Mirando who had the burden of disproving the government's prima facie showing of intended loss.  The majority abandons *Popov*'s burden-shifting framework.

Here, the district court was well within bounds in discrediting Mirando's last-minute testimony about what he expected in terms of the insurers' loss based on his vacillating knowledge of the industry.  At sentencing, Mirando testified that "the industry standard" was to reimburse "about 25 to 30 percent" of the amount billed.  But as the district court pointed out, Mirando had "argue[d] defenses at trial" that were "inconsistent" with his being knowledgeable about Medicare billing practices.[2]  The Sixth Circuit upheld an intended loss calculation for

---

[1] Although there is no need to decide the requisite degree of proof—the preponderance standard applied in *Popov* or the "clear and convincing" standard applied by the majority—there is ample evidence in the record to support the district court's finding that the government met either standard.

[2] The majority states that the district court "characterized Mirando's testimony as inconsistent with the jury's conclusions."  Maj. Op. at 3.  Not so.  Defense counsel argued to the jury that Mirando was only "doing what [he was] taught," and "if the insurance company didn't think the [billing] codes were inappropriate, why should anybody else"?  The prosecutor accurately summarized the defense argument as: "an expert was required to understand how all this

2

precisely this reason. *See United States v. Bertram*, 900 F.3d 743, 752 (6th Cir. 2018) ("[T]he defendants claimed that they never read or understood the [insurance] contract. That makes it implausible to maintain that they were subjectively aware that the contract would reimburse them only for a portion of the billed amount."), *cert. denied*, No. 18-708 (U.S. Jan. 7, 2019).

The majority faults the district court for accepting Mirando's testimony as to the amount of insurance payments he would have kept but not as to the prevailing reimbursement rates. *See* Maj. Op. at 4. But Mirando was obviously competent to opine on how he would react in a hypothetical situation, whereas he was not obviously competent to discuss actual medical billing standards, and his testimony laid no foundation for such knowledge. It is an "ancient fallacy" that "uncontradicted testimony must be accepted by a court finding the facts, particularly where, as here, the testimony is given by interested parties." *Wood v. Comm'r*, 338 F.2d 602, 605 (9th Cir. 1964).

Even taking Mirando's testimony regarding industry reimbursement practices at face value, the majority conflates "intended" with "expected" loss.

---

works." Therefore, the majority's assertion that "defense counsel presented no affirmative case," *id.*, is simply incorrect. *See, e.g.*, *Defense*, *Black's Law Dictionary* (10th ed. 2014) (defining a defense as "[a] defendant's method and strategy in opposing . . . the prosecution"); *United States v. Garrison*, 888 F.3d 1057, 1061 (9th Cir. 2018) ("Garrison did not call any witnesses of his own in his defense. Garrison's main line of defensive argument was that he was not aware of the conspiracy and that he did not knowingly participate in the conspiracy.").

3

The sentencing guidelines define "intended loss" as "the pecuniary harm that the defendant purposely sought to inflict; and . . . includes intended pecuniary harm *that would have been impossible or unlikely to occur*." U.S.S.G. § 2B1.1, cmt. 3(A)(ii) (emphasis added). As an example, the application note cites "an insurance fraud in which the claim exceeded the insured value."

Mirando testified that if an insurer paid more than he expected, he probably would have "kept the money." "The fact that [the insurers'] prudent business practices . . . thwarted [his] effort to realize more from his fraud is not relevant to determining the amount of loss he intended to inflict." *United States v. Tulaner*, 512 F.3d 576, 579 (9th Cir. 2008). Under similar circumstances, the Fifth Circuit affirmed an intended loss calculation based on the billed amounts rather than the reimbursed amounts. *See United States v. Umawa Oke Imo*, 739 F.3d 226, 240–41 (5th Cir. 2014) ("The district court found that even assuming [the defendant] knew that he would not be fully reimbursed, he sent Medicare and Medicaid bills with the intention that he would be paid."); *cf. United States v. Al-Shahin*, 474 F.3d 941, 950 (7th Cir. 2007) (affirming intended loss calculation based on the amount demanded of insurance company where defendants ultimately settled for a third of that amount but "'wanted more money' than they received").

I would affirm the district court's judgment in its entirety. Because the majority inappropriately substitutes its own factual findings for those of the district

4

court, disregards the sentencing guidelines, and thereby reaches a result at odds with other circuits, I dissent.